639 A.2d 1150

STATE IN THE INTEREST OF J.S.

Superior Court of New Jersey Chancery Division
Family Part Middlesex County

Decided September 13, 1993.

*Christopher L.C. Kuberiet,* for the State (*Robert W. Gluck,* Middlesex County Prosecutor, attorney).

*John P. Casale,* for the Juvenile.

CICCONE, J.S.C.

The issue presented before this court was brought by way of defendant's application to have the State's referral motion denied on the basis of fundamental fairness. This court must decide whether the more than two-year delay between the time the juvenile was charged with the alleged acts of delinquency and the time of the referral hearing so prejudiced the juvenile that fundamental fairness mandates that the juvenile court system maintain jurisdiction over this matter. This question appears to be a matter of first impression in New Jersey.

## FACTUAL BACKGROUND

The factual circumstances of this case began on August 14, 1990, when a juvenile delinquency complaint was signed against J.S., for an incident which, had he been an adult, would have given rise to a charge of second degree sexual assault contrary to *N.J.S.A.* 2C:14–2(b). At that time, J.S. was approximately sixteen years and six months old. According to police reports, J.S. forced a fifteen year old female acquaintance to have sexual intercourse with him. The juvenile court retained jurisdiction over this matter. On May 28, 1991, after a trial before the Honorable Martin Kravarik, J.S.C., J.S. was adjudged delinquent.

While J.S. was awaiting sentencing on the initial complaint, he was charged with two new counts of juvenile delinquency on June 21, 1991. Complaint 91–5518 charged J.S. for an act which, had he been an adult, would have given rise to a charge of attempted aggravated sexual assault contrary to *N.J.S.A.* 2C:14–2(a) and 2C:5–1. This time, J.S. allegedly attacked a seventeen-year-old female and attempted to force her to have sexual intercourse with him. Complaint 91–5519 alleged that J.S. violated a court order of Judge Kravarik.

On July 9, 1991, less than two weeks after the new complaints were filed, the State moved for a referral hearing pursuant to *N.J.S.A.* 2A:4A–26. No action was taken with respect to that application at that time nor at the recall hearing on July 12, 1991.

At the recall hearing on July 25, 1991, Judge Kravarik acknowledged receipt of the motion for a referral hearing but was waiting for information regarding the possibility of J.S.'s placement into the Pinelands Residential Group Home ("Pinelands") before he would set a date for the hearing.

On September 10, 1991, Judge Kravarik sentenced J.S. on the first conviction as follows:

a. Three years incarceration (stayed pending decision by Pinelands as to whether J.S. was to be accepted into the program);

b. If J.S. was accepted into Pinelands, then the custodial portion of the disposition is suspended, and the juvenile was to be placed on probation for three years; J.S. was also to attend and complete the program;

c. J.S. was to comply with all aftercare recommendations;

d. Program could be extended for one year in order to complete the program goals;

e. J.S. was to have no contact with the victim;

f. Division of Youth and Family Services ("DYFS") was to become involved;

g. *Complaints 91–05518 91–05519 were inactivated until discharge from Pinelands* (emphasis added).

On October 10, 1991, Judge Kravarik amended J.S.'s sentence to reflect his acceptance into the Pinelands Rehabilitation Program.[1] J.S. was approximately seventeen years and eight months old at the time he began treatment. Assuming J.S. successfully completed the Pinelands Program, he would be released at the age of twenty years and eight months.

Following sentencing on the initial matter, the State filed motions to reactivate the two subsequent complaints and to consolidate the charge of violation of a court order with the referral

---

[1] Pinelands is a rehabilitation program for male juvenile sex offenders who range from fourteen to seventeen years of age. The program generally takes approximately three years to successfully complete. It consists of an eighteen-month residential program where a patient would receive individual and group counselling. Upon completion of this portion of the program, the patient then spends another eighteen months on an out-patient basis where he is closely supervised by DYFS and the county probation department. This extended aftercare treatment and monitoring is considered critical in terms of relapse prevention.

motion. No action was taken by Judge Kravarik with regard to the motions.

On April 14, 1992, a case management conference was held and the court was presented with a progress report on J.S. prepared by Pinelands. The State again requested that the complaints be activated and a referral hearing be held. Judge Kravarik, apparently concerned with interrupting J.S.'s progress in the Pinelands program, again denied the State's requests.

On July 18, 1992, the State and the defense counsel briefed the court on the issue of whether or not the court had authority to delay the referral hearing pending the outcome of J.S.'s rehabilitation program. Judge Kravarik, apparently influenced by dictum in an unrelated unpublished Appellate Division case, *State of New Jersey in the interest of J.S.*, No. A–5915–90 (App.Div. June 17, 1992), reversed his earlier decision and reactivated the complaints and scheduled the matter for a referral hearing before the court. In that case, the Appellate Division stated that "[a]lthough the question is not before us for adjudication in this interlocutory appeal, we express our general disapproval of prolonging a referral hearing by deferring the determination to await the final outcome of a rehabilitative program in which the juvenile is enrolled." *Id.* at 3.

## LEGAL ANALYSIS

The controversy in this case is grounded in the referral statute, *N.J.S.A.* 2A:4A–26, which provides:

a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the family court to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:

(1) The juvenile was fourteen years of age or older at the time of the charged delinquent act; and

(2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:

(a) Criminal homicide other than death by auto, strict liability for drug induced deaths, pursuant to N.J.S. 2C:35–9, robbery which would constitute a crime of the first degree, aggravated sexual assault, *sexual assault,* aggravated

assault which would constitute a crime of the second degree, kidnapping or aggravated arson; or

(b) *A crime committed at a time when the juvenile had previously been adjudicated delinquent,* or convicted on the basis of any of the offenses enumerated in subsection a.(2)(a); or

. . . .

(g) *An attempt* or conspiracy to commit any of the acts enumerated in paragraph (a), (d) or (e) of this subsection. . . . (Emphasis added.)

■ Once the State meets its burden in establishing that (1) the juvenile was fourteen years of age or older at the time of the charged delinquent act, and (2) there was probable cause to believe that he or she committed any of the enumerated acts, the burden of proof shifts to the defendant and waiver can be defeated.

However, if in any case the juvenile can show that the probability of his rehabilitation by use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted.

[*N.J.S.A.* 2A:4A–26(a)(3).]

Thus, the juvenile has the burden of showing two things in order to avoid waiver. First, he must show the probability of his rehabilitation before he attains the age of nineteen years of age. Second, he must show that his rehabilitation substantially outweighs the reasons for waiver.

The juvenile argues that a referral hearing at this time, and specifically a finding that he should be waived and tried as an adult, will so seriously prejudice him as to deny him "any conceivable modicum of fundamental fairness." The juvenile's position is that the referral hearing should have been conducted closer to the time he was charged with the offenses. Had the referral hearing been scheduled at the time of sentence on the first complaint, the juvenile would have been approximately seventeen years and eight months old. He would have had the opportunity to show that he had about sixteen months in which to be rehabilitated before he turned age nineteen. J.S. argues that the opportunity to meet his burden under *N.J.S.A.* 2A:4A–26 has been lost because Judge Kravarik did not schedule the referral hearing until almost two

years later. J.S. suggests that he is now being asked to do the impossible; namely, to show that he can potentially be rehabilitated before age nineteen after he has already turned nineteen.

In opposition, the State argues that the entire premise upon which the defense bases its argument is fallacious. Specifically, it argues that because the Pinelands program would take J.S. three years to complete, J.S. would have already reached nineteen years of age while still in treatment. Even if the referral hearing was conducted closer to the date J.S. was charged, in June of 1991, when J.S. was seventeen years and four months old, it would still have been impossible for J.S. to meet the first part of his burden under *N.J.S.A.* 2A:4A–26 and to show his probability of rehabilitation by age nineteen. The State's position is that J.S. has not been deprived of fundamental fairness because he could not have met his statutory burden even if the referral hearing were held over two years ago at the time J.S. was charged.

*N.J.S.A.* 2A:4A–26 does not impose a time constraint upon when a referral hearing must be scheduled. It provides only that:

A motion seeking waiver shall be filed by the prosecutor within 30 days of receipt of the complaint. This time limit shall not, except for good cause shown, be extended. [*N.J.S.A.* 2A:4A–26(d).]

It cannot be inferred from this silence in the statute, that the Legislature intended that a referral hearing could be postponed indefinitely. Such a lengthy deferment could in some situations result in due process or other constitutional infringements.

█ It is undisputed that a transfer or waiver hearing is a very critical stage in a proceeding against a juvenile. Once the waiver of jurisdiction occurs, the juvenile "loses all the protective and rehabilitative possibilities available to the Family Part." *State v. R.G.D.*, 108 *N.J.* 1, 527 *A.*2d 834 (1987). In this case, J.S. could face a possible sentence of twenty years in prison if he is tried as an adult. If jurisdiction is not waived, the greatest sentence which could be imposed upon J.S. is four years in the Department of Corrections. Additionally, a court's decision to transfer a juvenile to adult court is not a final judgment, and is not reviewa-

ble as a matter of right. Thus, a juvenile must await final disposition of the matter before he can appeal a waiver decision or must seek interlocutory review. For these reasons, "the juvenile's procedural safeguards must be scrupulously honored at the waiver hearing stage." *State v. Fergueson,* 255 *N.J.Super.* 530, 536, 605 A.2d 765 (1992).

■■■■ The argument that a two-year prolongment of a referral hearing to await the outcome of a juvenile's rehabilitation program could infringe upon a defendant's basic right to fundamental fairness is meritorious. With the exception of the right to a trial by jury, juveniles are afforded the same constitutional rights as adult offenders. If a referral hearing is to be considered a "critical stage," then all fundamental constitutional rights afforded an adult in criminal prosecution must also attach at a juvenile referral hearing. Implicated in this case are the right to a speedy trial and due process as guaranteed under the Fourteenth Amendment. If a referral hearing is delayed for two years, a juvenile's case could be irreparably harmed. For instance, when referral hearings are had soon after juveniles are charged, they can present evidence to show that the proper rehabilitation program could reform them and help make them law abiding members of society by the time they turn nineteen years of age. By waiting and placing the juvenile in a program prior to the referral hearing, the juvenile can no longer meet the requisite burden should he or she happen to fail in the program. It becomes an impossible burden to prove that rehabilitation is probable after rehabilitation has already failed. In such a scenario, the juvenile is robbed of the opportunity to be heard and thus, due process is violated.

■■■■ In accordance with the above findings, because J.S. was not timely afforded an opportunity to be heard as to all possibility of rehabilitation, his due process rights potentially could have been violated. Here, however, this court finds, due to the unique facts of this case, that such inaction constituted harmless error.

J.S. was approximately seventeen years, four months old when he was charged with the offenses at issue. Had the referral

hearing been conducted at that time, J.S. still could not have proven the likelihood of his rehabilitation by age nineteen. This is so because Pinelands is a three-year program. Even assuming J.S. successfully completed the program, he could not have done so by age nineteen. Thus, it was impossible for J.S. to meet the first part of his burden under *N.J.S.A.* 4A:2A–26. While this court opposes the practice of prolonging a referral hearing to await the outcome of a rehabilitation program, it finds that such practice did not prejudice J.S. in this case.

For these reasons, this court shall schedule this case as soon as possible for a hearing on the referral motion.