939 A.2d 834

STATE OF NEW JERSEY IN THE INTEREST
OF D.Y., A JUVENILE.

Superior Court of New Jersey
Appellate Division

Argued January 23, 2008—Decided February 4, 2008.

Before Judges COBURN, FUENTES and GRALL [1].

*Timothy M. Ellis*, Assistant Prosecutor, argued the cause for appellant, State of New Jersey (*Robert D. Bernardi*, Burlington County Prosecutor, attorney; *Mr. Ellis*, of counsel and on the brief).

*Lon Taylor*, Assistant Deputy Public Defender, argued the cause for respondent, D.Y. (*Yvonne Smith Segars*, Public Defender, attorney; *Mr. Taylor*, of counsel and on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

The prosecutor filed a complaint in the Family Part charging D.Y., a juvenile, with conduct that if committed by an adult would constitute second degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1). Subsequently, the prosecutor obtained dismissal of that complaint, and on the same day filed in its stead a complaint charging D.Y. with conduct that if committed by an adult would constitute murder, *N.J.S.A.* 2C:11–3(a)(1) or (2). Both complaints arose from the same conduct; only the charge changed.

---

[1] Judge Grall was added to this case during oral argument with the consent of counsel.

More than thirty days after filing the aggravated assault complaint, but within thirty days after filing the murder complaint, the prosecutor moved in the Family Part for an order transferring the murder complaint to the Law Division, where D.Y. would be tried as an adult. The notice of motion included a detailed statement of reasons supporting the transfer. The Family Part judge denied the motion, ruling that it was untimely and that the prosecutor failed to show good cause for extending the thirty-day time limit set forth in *N.J.S.A.* 2A:4A–26 and reiterated in *Rule* 5:22–2(a). We granted the State leave to appeal and now reverse and remand for further proceedings.

Our statement of facts is based on the prosecutor's written reasons supporting his waiver motion. On March 22, 2007, police were dispatched to a bar in Burlington. They found the victim lying face down on the floor with a bloody kitchen knife near his body. He had been stabbed, once in the back and once in the chest. The police took him to a hospital, where he was pronounced dead. A lengthy investigation ensued involving the questioning of numerous witnesses. By April 24, the police had developed probable cause indicating that D.Y., who was sixteen years old, and another juvenile and three adults were responsible to one degree or another for the assault in the bar that led to the victim's death. Up to that point, however, the police had been unable to establish who had wielded the knife, and some of the witnesses had provided information indicating that the knife wielder was not D.Y.

On April 24, 2007, D.Y. was charged in the Family Court with second degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1).

On May 22, 2007, during the continuing investigation, the police learned that shortly before the assault, D.Y., while in the company of three of the codefendants at his house on Sandal Lane, Willingboro, "went into the kitchen and brought out three (3) steak knives, handed them to" [two of the co-defendants] and told "them to, 'Suit Up'." One of the co-defendants said to the police that he understood that to mean to get ready to fight. He also related

that D.Y. said they were going to the bar to assault the victim, who had earlier struck D.Y.'s father. After the assault, this co-defendant added, he saw D.Y. and another co-defendant throw knives on the roof of a building near the bar.

On June 1, the police searched the rooftop of a building near the bar and found two knives. Those knives and the knife found at the bar matched knives still present at D.Y.'s Sandal Lane house.

Because of the information developed on May 22, the prosecutor decided to file a complaint on that date in the Family Part charging D.Y. with murder, at which time the assault charge was dismissed. And on June 20, 2007, the prosecutor filed the notice of motion for waiver of the murder charge to the Criminal Part.

■ The waiver motion must be "filed by the prosecutor within 30 days of receipt of the complaint." *N.J.S.A.* 2A:4A-26(d). That time limit may be extended but only "for good cause shown . . . ." *Ibid.* Those statutory provisions are reiterated in *Rule* 5:22-2(a).

The relevant principles of statutory construction were summarized by the Court in *State v. Brannon,* 178 *N.J.* 500, 505-06, 842 *A.2d* 148 (2004), as follows:

> When construing a statute, our goal is to discern and effectuate the Legislature's intent. The starting point for that inquiry is the language of the statute itself. When a " 'statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent.' " Courts should "read and examine the text of the act and draw inferences concerning the meaning from its composition and structure." [Citations omitted.]

The statute requires the prosecutor to file the waiver motion within thirty days of receipt of the complaint. It follows, of course, that when the prosecutor files the complaint rather than receives it, the thirty days begin to run from the date on which the complaint to which the waiver motion is addressed is filed. Here, the waiver motion was timely under the statute and the court rule because it was brought within 30 days of the filing of the murder complaint. But we do not mean to imply that the earlier complaint is irrelevant. It is not irrelevant because D.Y. was being held in detention for this incident on that complaint. Thus, for

example, if D.Y. had been prejudiced by the delay, the motion might have been denied on that basis. *State in Interest of J.W.,* 287 *N.J.Super.* 157, 162, 670 *A.*2d 597 (Ch.Div.1995); Cf. *State in Interest of J.S.,* 272 *N.J.Super.* 338, 345–46, 639 *A.*2d 1150 (Ch. Div.1993). But there was no prejudice here.

 Were we to assume that the prosecutor was obliged to file the waiver motion within thirty days of the filing of the first complaint, we would still reverse because good cause was shown for extension of the time limit. First, we note that neither the statute nor the rule require that the motion for an extension be filed within the thirty-day period. Here, the motion was filed less than sixty days after the first complaint was filed. And when that complaint was filed, D.Y.'s precise role in the attack on the victim was uncertain. When subsequent investigation revealed that D.Y. appeared to be the primary instigator of the attack, that he had supplied two of his accomplices with the knives brought to the bar, and the knives were found to match knives in D.Y.'s house, the case against D.Y. changed dramatically. At that point, the prosecutor reasonably determined that a charge of murder could be maintained against D.Y., and promptly filed the new complaint. We conclude that under these circumstances the prosecutor has shown good cause for an extension of the thirty-day limit.

Since D.Y. was over sixteen when the murder was committed, he could not prevent the waiver by showing that a probability of rehabilitation before the age of nineteen outweighed the reasons for waiver. *N.J.S.A.* 2A:4A–26(e); *State ex. rel. R.C.,* 351 *N.J.Super.* 248, 254, 798 *A.*2d 111 (App.Div.2002). But he was entitled to be heard on the questions of whether the waiver complied with the "Juvenile Waiver Guidelines" issued by the Attorney General and whether it constituted a gross and patent abuse of discretion. *Id.* at 254–60, 798 *A.*2d 111; *State v. J.M.,* 182 *N.J.* 402, 419, 866 *A.*2d 178 (2005). Because of the nature of his ruling, the Family Part judge did not reach those issues. Therefore, a remand is required for their resolution.

Reversed and remanded to the Family Part.