**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3942-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JONATHAN PEREZ,

     Defendant-Appellant.

_____

Submitted October 16, 2018 – Decided November 26, 2018

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 11-12-2992.

Joseph E. Krakora, Public Defender, attorney for appellant (Rebecca L. Gindi, Assistant Deputy Public Defender, of counsel and on the briefs).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John J. Lafferty, IV, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jonathan Perez appeals from his March 31, 2017 conviction and sentence after pleading guilty to aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). Defendant argues the trial court's grant of an involuntary waiver from the Family Part to the Law Division was error. He further argues the trial court's ruling he was competent to stand trial was error and his sentence was excessive. We affirm in part and vacate and remand in part.

Defendant, who was seventeen years old at the time, was charged with acts that, if committed by an adult, would have constituted second-degree robbery, N.J.S.A. 2C:15-1(a)(1) (charge one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (charge two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (charge three); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (charge four); first-degree robbery, N.J.S.A. 2C:15-1(a) (count five); first-degree murder, N.J.S.A. 2C:11-3(a)(2) (charge six); and first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count seven). These charges stem from a brutal assault and robbery that resulted in the elderly victim's death.

The State moved to waive jurisdiction to the Law Division pursuant to N.J.S.A. 2A:4A-26. In its application, the State recounted the facts and investigation, pointed out defendant was born on August 13, 1993, and indicated

2

the First Assistant Prosecutor authorized the filing of the waiver motion. Attached as exhibits were the juvenile delinquency complaints, police reports, preliminary autopsy findings of the medical examiner, prosecutor's waiver authorization, and a printout of defendant's juvenile court record. The waiver authorization form noted defendant was charged with murder, felony murder, and armed robbery, and faced a maximum term of incarceration in the Law Division of thirty years to life, subject to the provisions of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, but a maximum term of incarceration of an indeterminate twenty years in the Family Part. With regard to deterrence considerations, the prosecutor indicated the sentencing exposure and application of NERA militated in favor of waiver. The prosecutor also stated that a plea to juvenile delinquency charges in lieu of waiver had not been offered to defendant.

The following facts were submitted by the detective who testified at the waiver hearing conducted on September 22, 2011. At approximately 2:00 a.m. on July 29, 2011, patrol units of the Atlantic City Police Department were flagged down and also summoned by a 911 call regarding a man who was assaulted and lying on the ground. The responding officers found the victim, who exhibited substantial facial injuries, lying unconscious on the sidewalk, in

a pool of blood.  Medical assistance was requested and the victim, who remained unconscious and unresponsive, was transported to the hospital by ambulance.

Investigating officers photographed and recovered two beer cans, a disposable lighter, a milk crate, and a baseball cap from the scene.

The assault was captured on a surveillance video.  The video depicted perpetrator striking the victim with a milk crate.  The milk crate recovered at the scene appeared to have a blood stain on it.

The assault occurred at 2 a.m.  The next evening a bartender working at a nearby bar contacted police and advised them a patron in the bar witnessed the assault.  The witness told the bartender the perpetrator just walked by the bar.  When police spoke to the witness, Maria Delgado, she provided information regarding the perpetrator, who she was familiar with.  She described the perpetrator as a tall Mexican male, between fifteen and seventeen years old, who was wearing a blue and white striped shirt when he walked by the bar.  She told police his name is Jonathan and provided his address in Atlantic City.

Police learned that both Delgado and another witness, Clara Tornes, witnessed the assault.  They identified the victim as Alfred Kessleski, who they called Papi.  They saw three neighborhood males named Jonathan, Willy, and

Passole (phonetic) with the victim, and saw defendant with the victim's wallet in his hands just after the assault.

Police located defendant, who matched the images on the video and the descriptions given by Delgado and Tornes. They brought defendant to the bar, where he was identified by Delgado and Tornes. Defendant was then transported to police headquarters.

After being informed of her rights, defendant's mother signed a consent to search form for the search of defendant's residence. Police retrieved a pair of black and red Nike sneakers with what appeared to be blood on them from defendant's bedroom. The police also seized defendant's blue and white striped shirt and the pants he was wearing. The pants had a blood stain on them. The pants and sneakers tested presumptively positive for human blood, as did the milk crate recovered from the scene.

The surveillance video of the incident was played for the court. It depicted an individual sitting on a milk crate. Delgado and Tornes are seen. The victim is hit by a milk crate and falls. Defendant is shown hitting the victim. Defendant is shown picking the victim up, throwing him to the sidewalk, and stomping on him. Defendant then rolls the victim over, takes his wallet, and runs off. Moments later, the police arrive, and Delgado and Tornes are seen again.

 A-3942-16T2

The video of the incident depicts defendant wearing a red t-shirt and jeans. Defendant was also captured on a surveillance video at the Atlantic City Public Safety Building wearing a red t-shirt and jeans about an hour and a half before the incident. This video was also played for the court. The detective identified defendant as the person depicted in the video.

The victim died at the hospital on August 2, 2011. An autopsy was performed by a medical examiner. The autopsy lists the cause of death as blunt head trauma and the manner of death as a homicide. The preliminary autopsy findings were the victim sustained fractures of two ribs, his occipital bone, and facial bones; subdural hemorrhages; a subarachnoid hemorrhage; a parenchymal hemorrhage; multiple facial lacerations and abrasions; and abrasions of the left chest, elbow, and right thumb.

Defendant was charged with the seven juvenile offenses. Defendant did not introduce any evidence or present any witnesses at the waiver hearing. The assault took place only fifteen days before defendant's eighteenth birthday.

The court noted all the State had to show was that defendant was at least sixteen years old and there was probable cause he committed an offense making him eligible for waiver to adult court. The family part judge found defendant was seventeen years old on the date of the incident. After recounting the

6

evidence submitted by the State during the hearing, the judge also found there was probable cause for the murder, felony murder, aggravated assault, weapon possession, and robbery charges. The judge ordered jurisdiction waived to the Law Division.

Defendant was subsequently indicted for murder (count one), first-degree robbery (count two), felony murder (count three), and possession of a weapon for unlawful purposes (count four).

For the next four years, defendant was not found competent to stand trial. On July 23, 2013, defendant was found unfit to proceed to trial, and was transferred to the Ann Klein Forensic Center (AKFC). On April 28, 2015, defendant was again found unfit to proceed to trial and required institutionalization because he was a danger to himself, others, or property.

On August 18, 2016, the trial court conducted a testimonial competency hearing. Defendant's appearance at the hearing was waived. Joanna Bajgier, M.D., a board-certified psychiatrist, and Jonathan H. Mack, Ph.D., a retired licensed clinical neuropsychologist, testified for the State. Charles Kaska, Ph.D., a retired forensic psychologist, testified for the defense. Admitted into evidence were the competency evaluation report prepared by Dr. Bajgier and the forensic mental health evaluation report prepared by Dr. Mack.

Dr. Bajgier was defendant's treating psychiatrist at AKFC, seeing him on at least a weekly basis. In her report dated September 18, 2015, Bajgier stated defendant basically had a ninth-grade education, was able to speak both English and Spanish, and "appears to have fair command of the English language." He was described as being "alert, fully oriented, and cooperative with the evaluation." Dr. Bajgier reported defendant stated "his mood was 'good' and his affect was neutral. His thought process was goal-directed and speech was normal. He denied any type of hallucinations and did not appear to be experiencing any. He did not express any delusional thought content. He denied any suicidal or homicidal thinking."

Dr. Bajgier found defendant's "short- and long-term memory was intact, as indicated by his ability to recall [three] of [three] words after [five] minutes and recall presidents in reverse order back to Clinton." She described his concentration ability as "intact, as he was able to attend to questions without being distracted by others coming and going in the room."

Dr. Bajgier noted that on September 11, 2015, defendant "reported to an officer that he had been 'lying' about having a mental illness and that he wanted to meet with me to discuss." When she met with defendant, he "stated he 'has no mental problem,' and that he had been malingering in hopes that his case

would somehow go away." Defendant "denied ever having hallucinations, paranoia, or mood disorder symptoms." As a result, Dr. Bajgier discontinued his anti-psychotic medication. Tellingly, Dr. Bajgier reported defendant had no current psychiatric diagnosis.

Dr. Bajgier performed a competency skills assessment of the defendant to determine whether mental illness or retardation affected his mental status such that it would interfere with his comprehension of the legal issues or the roles of the parties in his trial or with his ability to assist in his defense. The assessment revealed defendant was alert and fully oriented to time, place, and things. Defendant understood he was charged with murder. He stated a judge "listens to the facts," and is "not on the side of the prosecutor, not on my side, he's on nobody's side. He just listens to the facts." Defendant stated the prosecutor "proves you're guilty, wants a conviction." He said his lawyer "proves my innocence." Defendant acknowledged he understands his right to testify or not, and if he chooses to testify, he would be obligated to tell the truth.

When questioned regarding the role of the jury, defendant said the jury will "vote guilty or not guilty." Defendant understood the concept of a guilty plea, stating that he was previously offered a plea bargain for 30 years. He said

A-3942-16T2

that a person might enter a guilty plea in order to "get less time" than they could be sentenced to if found guilty at trial.

With regard to defendant's ability to participate in an adequate presentation of his defense, Dr. Bajgier concluded defendant

> does have the ability to participate in an adequate presentation of his defense. He understands what he is charged with, knows the date of the alleged offense, and was able to recall some of the evidence that the prosecution may have against him. He is motivated to obtain the best outcome for himself. He is not suffering from a mental illness that could interfere with his abilities.
>
> [Emphasis added.]

Dr. Bajgier testified that based on the results of her mental status examination, defendant was alert, fully oriented, and cooperative with the evaluation. She further stated upon his entrance to AKFC, defendant's test results and statements raised suspicions of malingering.

As part of his two-day psychological evaluation of defendant, Dr. Mack performed a battery of psychological tests, including a Competence Assessment for Standing Trial for Defendants with Mental Retardation. Based on the test results and interview, Dr. Mack opined defendant:

> is clearly feigning incompetency to stand trial and that [defendant] does actually understand the criminal justice system, is capable of rationally understanding

the courtroom proceedings, does have an accurate understanding of his own case, but is pretending not to be competent in order to deliberately and intentionally remain out of prison and in a psychiatric facility.

Dr. Mack further concluded defendant "qualifies for the DSM-5 diagnosis of Malingering (DSM-5 Z76.5)." He also concluded that, by history, defendant may have learning disabilities, but there was "no definitive evidence" defendant has "Mild Intellectual Disability/Mild Mental Retardation as opined by Dr. Kaska." Dr. Mack noted that "Dr. Kaska failed to use the current edition of the Wechsler Adult Intelligence Scale and also failed to do his own symptom validity testing to determine if the IQ scores were accurate." He also stated: "Dr. Kaska did not use the Test of Memory Malingering, The Validity Indicator Profile, the SIRS-2, the SIMS or any other measures of cognitive effort or symptom reporting response bias, to validate his findings[.]" Dr. Mack also found Dr. Kaska's use of the Rorschach test was "of markedly questionable validity in the context of forensic mental health evaluations."

Dr. Mack found it was likely defendant was "exaggerating his adaptive functioning difficulties" when administered the Vineland Adaptive Behavioral Scales "to support his claim of incompetency." He noted defendant's low IQ scores were invalid given his malingering. Dr. Mack opined defendant was competent to stand trial.

11

During his testimony, Dr. Mack emphasized that for defendant to receive the scores he had obtained on four of the tests that were administered, which were designed to detect malingering, defendant had to be intentionally feigning incompetence. He characterized defendant's statements as containing numerous inconsistencies. Defendant failed multiple malingering tests, with the test scores pointing to a deliberate intention to lie. Dr. Mack further emphasized that defendant's answers to some of his questions about the criminal justice system were inconsistent, and that the "hallmark of malingering is inconsistency." Additionally, Dr. Mack testified defendant lied to mental health professionals regarding his competency, and that the results of some of the tests he administered could not be relied on because of the malingering exhibited by defendant. He concluded defendant was "pretty much straight-up feigning."

Based on a ninety-minute interview with defendant and a previous psychological evaluation he performed in June 2012, Dr. Kaska opined:

> [Defendant's] primary limitations are intellectual and educational: He scored in the mildly retarded range when I tested him three years ago and he cannot read or write. But his current presentation suggests that he may be additionally handicapped by a thought disorder characterized by tangential thoughts and paranoid ideation. There is also a growing suspicion of auditory hallucinations but it remains undetermined whether he is experiencing "voices" or simply reporting his own troubling thoughts.

12

> The appropriate diagnostic formulation is beyond the scope of this evaluation and needs to be developed by clinical staff at the center. What is clear is that [defendant] is not at this time competent to stand trial and will not be so until his mental state is stabilized through a regimen of proper medication, therapy and education regarding court proceedings.

Dr. Kaska testified that defendant appeared to have an understanding of the roles of certain court personnel and the nature of the proceedings. Nevertheless, Dr. Kaska testified it is possible for a person to feign incompetence and still be incompetent to stand trial. On cross-examination, Dr. Kaska acknowledged the best way to determine defendant's competency is by looking to the opinions of professionals who see him on a regular basis. During his 2015 interview, defendant did not display any unusual mannerisms and was able to focus his attention. Defendant's command of the English language had improved and he was able to use and understand advanced legal terminology.

In an October 21, 2016 written opinion, the trial court found defendant competent to stand trial by a preponderance of the evidence. The judge concluded Dr. Bajgier's testimony was the "most persuasive" and the conclusions reached by Dr. Bajgier and Dr. Mack to be "much more thorough and persuasive than that of Dr. Kaska." In reaching those conclusions the judge engaged in the following analysis:

Not only is Dr. Bajgier [d]efendant's current psychiatrist and has been seeing [d]efendant for over a year, but her testimony regarding [d]efendant's competency is supported by numerous pieces of evidence. Over the course of more than a year, Dr. Bajgier has had the opportunity to test, communicate with, and evaluate the competency of the [d]efendant. Not only has [d]efendant's testing results shown evidence of malingering, [d]efendant has openly admitted to this. Defendant has stated that he understands that going to trial can lead to jail time, and [d]efendant would much rather remain in AKFC, rather than be sent to jail. Evidence of malingering is shown through numerous tests conducted by Dr. Bajgier and Dr. Mack. Both doctor[]s testified to the fact [d]efendant has been very open about his desires, which tend to show competency. Through direct interaction with [d]efendant and various testing conducted, Dr. Bajgier and Dr. Mack concluded that [d]efendant is malingering, and therefore would be competent to stand trial.

Only Dr. Kaska opined otherwise, basing his evaluation off of limited interactions with the [d]efendant. Dr. Kaska's conclusion is derived from a 90-minute interview in December of 2015 and a psychological evaluation conducted in June of 2012, Dr. Kaska, in his report . . . stated that [d]efendant was able to "focus and sustain his attention" even though there were noises coming from outside the hall. Also, [d]efendant stated that he "only speak[s] English when I feel like it," and Dr. Kaska noted that [d]efendant's English has improved. However, Dr. Kaska's conclusion is merely based off of this 90-minute interview with the [d]efendant, and a psychological evaluation that is over four years old. In contrast, Dr. Bajgier's evaluation of the [d]efendant is more in depth, and involved conducting numerous psychological

14

examinations. Dr. Bajgier noted that the [d]efendant was alert and fully oriented, knew the charges against him, understood the roles of the judge, prosecutor, the defense attorney, and his rights to not testify when asked. Defendant also stated that he is motivated to obtain the best outcome for himself. Additionally, Dr. Mack agreed with the conclusion of Dr. Bajgier. Dr. Mack conducted numerous tests, including a CAST-MR exam and the ECST-R. These exams were developed to determine whether an individual is competent to stand trial. Dr. Mack's conclusion, one which Dr. Bajgier also agrees with, is that [d]efendant is deliberately feigning incompetency to stand trial. There were numerous inconsistencies with his statements, and at one point, [d]efendant even stated that he knew there was a lot of evidence against him and asked "what's the point of me going to trial?" and that it is a "waste of time."

On February 27, 2017, defendant entered into a plea agreement, pleading guilty to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), in exchange for a sentencing recommendation of a twenty-four-year NERA term and dismissal of the remaining charges. The plea agreement preserved defendant's right to appeal the juvenile waiver and competency to stand trial rulings.

Defendant was twenty-three years old when sentenced. He has no prior adjudications of juvenile delinquency or other criminal convictions. Defendant claims he was under the influence of alcohol, cocaine, and psychiatric medications when he committed the offense.

15

At sentencing, the trial court found aggravating factors one (offense committed in an especially heinous, cruel, or depraved manner), N.J.S.A. 2C:44-1(a)(1); three (risk defendant will commit another offense), N.J.S.A. 2C:44-1(a)(3); and nine (need for deterrence), N.J.S.A. 2C:44-1(a)(9); and mitigating factor seven (defendant has no history of prior delinquency or criminal activity), N.J.S.A. 2C:44-1(b)(7). Defendant was sentenced in accordance with the plea agreement. This appeal followed.

Defendant argues:

POINT I

BECAUSE THE FAMILY PART FAILED TO ENGAGE IN ANY REVIEW ON THE RECORD OF THE PROSECUTOR'S STATEMENT OF REASONS FOR WAIVER AND BECAUSE THE STATEMENT OF REASONS WAS DEFICIENT, THIS COURT MUST REMAND THIS MATTER TO THE FAMILY PART FOR A NEW WAIVER HEARING PURSUANT TO THE NEW WAIVER STATUTE, N.J.S.A. 2A:4A-26.1.

POINT II

THE MOTION COURT ERRED IN FINDING J.P. COMPETENT TO STAND TRIAL BECAUSE THE PROSECUTOR FAILED TO PROVE J.P.'S COMPETENCE BY A PREPONDERANCE OF THE EVIDENCE AND BECAUSE THE COURT OVERVALUED THE EVIDENCE OF J.P.'S TREATING PSYCHIATRIST. U.S. CONST., AMEND. XIV; N.J. CONST., ART. I, PAR. 10.

16

J.P.'S TWENTY-FOUR YEAR NERA SENTENCE, INCURRED FOR AN OFFENSE COMMITTED WHILE A JUVENILE, MUST BE VACATED AND THE MATTER REMANDED BECAUSE THE COURT FAILED TO CONSIDER J.P.'S AGE, ATTENDANT CIRCUMSTANCES, AND MENTAL ILLNESS, AND IMPROPERLY FOUND NON-STATUTORY AGGRAVATING FACTORS.

The waiver statute in effect at the time of the waiver hearing in 2011, N.J.S.A. 2A:4A-26, did not require consideration of the factors imposed by the successor statute, N.J.S.A. 2A:4A-26.1(c)(3), which went into effect more than four years later on March 1, 2016, L. 2015, c. 89, § 1. Instead, the statute only required the State to prove defendant was at least sixteen years old at the time the offense was committed and there was probable cause defendant committed a delinquent act which if committed by an adult would constitute certain enumerated offenses. N.J.S.A. 2A:4A-26. "Simply stated, when a sixteen-year old or above is charged with an enumerated offense, the prosecutor need only establish probable cause for the court to waive the juvenile to adult court." State v. J.M., 182 N.J. 402, 412 (2005).

The State has discretion to seek waiver of juvenile charges decision from the Family Part to the Law Division. J.M., 182 N.J. at 419. The Attorney

General was required by statute to establish guidelines for seeking waiver. N.J.S.A. 2A:4A-26(f).

> The Legislature required the Attorney General to issue such guidelines to eliminate arbitrariness or abuse of discretionary power and to permit statewide uniformity in the exercise of prosecutorial discretion. See State ex rel. R.C., 351 N.J. Super. 248, 257 (App. Div. 2002).
>
> Consistent with that mandate, the Attorney General prepared and published the guidelines for the prosecutor to follow in determining whether to seek waiver. Attorney General's Juvenile Waiver Guidelines (March 14, 2000). The guidelines require the prosecutor to prepare a statement of reasons for a waiver application.
>
> [J.M., 182 N.J. at 419.]

The statement of reasons should accompany the waiver motion. Ibid.

The Guidelines instructed prosecutors to consider the following factors in deciding whether to seek a waiver: (1) the nature of the offense, including the death of a victim, the role of the juvenile therein, whether grave and serious harm was inflicted on the victim, and the use or possession of a weapon during the course of the offense; (2) the need for deterrence; (3) the effect of waiver on the prosecution of any co-defendants; (4) the maximum sentence and length of time served; (5) the juvenile's prior record; (6) the likelihood of conviction and the potential need for a grand jury investigation; and (7) the victim's or the

victim's family's input. Guidelines at 5-6. The prosecutor briefly addressed these factors in the statement of reasons for the waiver submitted to the court as part of the State's waiver application.

Acts of delinquency that, if committed by an adult, would constitute criminal murder, first-degree robbery, and second-degree aggravated assault are enumerated offenses under the both the current waiver statute, N.J.S.A. 2A:4A-26.1(c)(1)(2) (a), (c), and (g), and the prior waiver statute, N.J.S.A. 2A:4A-26(a)(1)(a) (repealed). Defendant was seventeen when the offenses were committed. Consequently, the statutory enumerated offenses and age requirements were met.

The Family Part judge next considered whether there was probable cause for the juvenile charges. "Probable cause is a well-grounded suspicion or belief that the juvenile committed the alleged crime." J.M., 182 N.J. at 417 (citing State v. Moore, 181 N.J. 40, 45 (2004)). Based on the evidence adduced during the hearing, the judge found there was probable cause for each of the charges brought against defendant. We agree. The evidence presented by the State at the waiver hearing was more than sufficient to establish probable cause for each of the charges.

The judge considered the waiver of defendant's juvenile charges to adult court automatic given defendant's age, the charges he faced, and the existence of probable cause for the charges. However, the waiver hearing "involves more than just a determination of probable cause." State ex rel. N.H., 226 N.J. 242, 255 (2016). A prosecutor's decision to waive a juvenile complaint to adult court is subject to review to determine "whether the waiver complied with the 'Juvenile Waiver Guidelines' issued by the Attorney General and whether it constituted a gross and patent abuse of discretion." State ex rel. D.Y., 398 N.J. Super. 128, 132 (App. Div. 2008). The Family Part judge did not reach or decide either of those issues. Therefore, the case must be remanded to the Family Part to make these determinations. J.M., 182 N.J. at 419; D.Y., 398 N.J. Super. at 132; R.C., 351 N.J. Super. at 262.[1]

This matter is on direct appeal. Defendant argues N.J.S.A. 2A:4A-26.1 should be given pipeline retroactivity and applied on remand. We agree. The Supreme Court has applied pipeline retroactivity to the revised waiver statute. N.H., 226 N.J. at 249. Therefore, the waiver hearing shall be "controlled by the

---

[1] We do not vacate the finding the State established probable cause defendant committed the offenses charged. Therefore, on remand, the Family Part should not reconsider the issue of probable cause.

revised waiver statute."[2] Ibid. On remand, the prosecutor and the Family Part judge shall consider the factors set forth in N.J.S.A. 2A:4A-26.1(c)(3). The prosecutor shall be afforded a reasonable period to submit a revised statement of reasons for the waiver addressing each of the statutory factors. The remand judge shall make findings and conclusions of law. R. 1:7-4(a).

We next address the trial court's determination defendant was competent to stand trial. "The test for competency to stand trial arises from basic concepts of due process." State v. Purnell, 394 N.J. Super. 28, 47 (App. Div. 2007). When a defendant is tried while incompetent to stand trial, that defendant has been "deprived of his due process right to a fair trial." State v. Cecil, 260 N.J. Super. 475, 480 (App. Div. 1992). The State has the burden of proving competence to stand trial by a preponderance of the evidence. State v. Lambert, 275 N.J. Super. 125, 129 (App. Div. 1994). At a minimum, the State must show the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings against him." Purnell, 394 N.J. Super. at 47

---

[2] The recently published opinion in State v. Bass, ___ N.J. Super. ___ (App. Div. Nov. 14, 2018) is distinguishable. In Bass, defendant appealed from the denial of his fourth petition for post-conviction relief. The "defendant's direct appeal ha[d] long since been concluded." Id. (slip op. at 14). Therefore, pipeline retroactivity did not apply in Bass.

A-3942-16T2

(quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

The test for competency to stand trial in New Jersey is codified in N.J.S.A. 2C:4-4(a), which provides: "No person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures." The proofs must establish that the defendant understands his presence in a courtroom facing criminal charges; the role of the judge, prosecutor and defense attorney; his rights and the consequences of waiver of the same; and his ability to participate in his own defense. N.J.S.A. 2C:4-4(b).

Our review of a trial court's competency determination is "'typically, and properly, highly deferential.'" State v. M.J.K., 369 N.J. Super. 532, 548 (App. Div. 2004) (quoting State v. Moya, 329 N.J. Super. 499, 506 (App. Div. 2000)). We do not review the factual record to determine how we would decide the matter if we were "the court of first instance." State v. Johnson, 42 N.J. 146, 161 (1964). Moreover, a trial court's determination on the subject of competency will be sustained if there is sufficient supporting evidence in the record. Purnell, 394 N.J. Super. at 50.

We have considered the defendant's contentions in light of the record and applicable legal principles and conclude the judge did not abuse her discretion

A-3942-16T2

in finding defendant competent to stand trial. We affirm substantially for the reasons expressed by the judge in her well-reasoned written opinion. We add the following comments.

"[E]xpert testimony is needed where the factfinder would not be expected to have sufficient knowledge or experience and would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citation omitted). "Expert testimony, however, 'need not be given greater weight than other evidence nor more weight than it would otherwise deserve in light of common sense and experience.'" State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004) (quoting Torres, 342 N.J. Super. at 430). The factfinder, of course, is free to accept or reject all or part of an expert's testimony. Ibid. "Respecting expert opinions of psychiatrists or psychologists, the court, sitting as a factfinder, must use its 'common sense and ordinary experience.'" Ibid. (quoting In re Yaccarino, 117 N.J. 175, 196 (1989)). "This is particularly true when, as here, the factfinder is confronted with directly divergent opinions expressed by the experts." Ibid.

Faced with the divergent opinions expressed by the experts, the judge, sitting as the factfinder, gave more weight to the conclusions reached by Dr. Bajgier and Dr. Mack, finding them to be "much more thorough and persuasive

than that of Dr. Kaska." The judge determined defendant was competent to stand trial by applying the standards contained in N.J.S.A. 2C:4-4. The judge's findings in this regard are based on evidence adduced at the hearing, which included extensive expert testimony from both sides. The judge's findings, which are fully supported by the record, command our deference.

Finally, defendant argues his sentence must be vacated and the matter remanded for resentencing because the trial court failed to consider his age, the attendant circumstances, and his mental illness and improperly found non-statutory aggravating factors. In light of our remand of the trial court's waiver decision, we do not reach defendant's sentencing argument.

In sum, we vacate the waiver of the juvenile charges to the Law Division and remand for the Family Part to conduct a new waiver hearing pursuant to N.J.S.A. 2A:4A-26.1, but affirm the finding that probable cause existed for the juvenile charges. We affirm the order finding defendant competent to stand trial.

Affirmed in part and vacated and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3942-16T2