# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2549-20

STATE OF NEW JERSEY
IN THE INTEREST OF A.G.,
a Juvenile.

_____

Argued October 18, 2021 – Decided November 22, 2021

Before Judges Rothstadt, Mayer and Natali.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket Nos. FJ-03-0029-21, FJ-03-0030-21, FJ-03-0031-21 and FJ-03-0038-21.

Jennifer B. Paszkiewicz, Assistant Prosecutor, argued the cause for appellant (Scott A. Coffina, Burlington County Prosecutor, attorney; Jennifer B. Paszkiewicz, of counsel and on the brief).

Kareem J. Crawford argued the cause for respondent A.G.

PER CURIAM

We granted leave to appeal to review a Law Division order denying the State's waiver application for A.G., a then sixteen-year-old juvenile, who faced charges of attempted murder, aggravated assault, and related weapons offenses.

The court denied the State's motion solely on a technical, procedural ground; namely, that the State inadvertently missed the statutory sixty-day deadline to file its application by forty-eight hours, and failed to establish "good cause," under N.J.S.A. 2A:4A-26.1, warranting an extension. We reverse and remand for the court to issue substantive findings on the State's waiver application.

I.

The charges against A.G. are based on two incidents that occurred on April 16, 2020 involving three other juveniles. According to the State, after J.H. (John)[1] directed insulting comments over social media to A.G. regarding A.G.'s deceased father, they agreed to a fistfight at A.G.'s residence later that day. When John and his friend, A.H. (Alan), arrived at A.G.'s house, A.G. allegedly pulled out a gun and shot it in John's direction, causing him and Alan to flee in their vehicle.

A.G. and John agreed, again via social media, to a second meeting later that night where they promised to "put the guns down." John arrived again with Alan, and a third individual, D.R. (Daniel). When John exited his vehicle, A.G. allegedly pulled out a weapon, pointed it at Daniel and fired. Daniel and John stated they ran back to their car and drove away but recalled hearing additional

---

[1] We employ initials and pseudonyms to protect the privacy of the parties.

A-2549-20

shots fired. Ballistics reports confirmed additional shots had been fired, entering through the rear windshield of the car and hitting the back of the passenger seat headrest. The police were unable to speak to A.G. regarding the incidents, but his mother stated on the night of the shooting, he was at home asleep.

On July 17, 2020, A.G. was charged with first-degree attempted murder, second-degree possession of a firearm for an unlawful purpose, second-degree unlawful possession of a firearm, second-degree aggravated assault, and fourth-degree aggravated assault pointing a firearm. On September 17, 2020, the prosecutor sought A.G.'s waiver to adult court arguing A.G.'s actions satisfied N.J.S.A. 2A:4A-26.1(c)(3)(a)-(k), and particularly factors (a), (b), (c), (d), (f), (g), and (k). That application was filed two days after the statutory sixty-day period. See N.J.S.A. 2A:4A-26.1(a).

The State gave significant weight to factor (a), "the nature and circumstances of the offense[s] charged" because of "A.G.'s conduct in possessing a firearm and discharging it in the direction of other juveniles, on two separate occasions." The State further noted that A.G. was exclusively responsible for the offenses under factor (c) and showed a "degree of maturity and planning" under factor (d), as "his attacks on [John, Alan, and Daniel],

include[ed] deceiving them into believing that he would not bring a gun to the nighttime fight."

On September 2, 2020, defendant's counsel requested a thirty-day extension of the waiver deadline to allow A.G. extra time to negotiate with the State with the goal of resolving the case "in juvenile [court]." The State then filed its waiver application on September 17, 2020, which was, as noted, two days after the filing deadline. The motion judge scheduled a waiver hearing for the end of October 2020 at the request of defendant's counsel in part because defendant's expert's psychological report was not yet complete.

The waiver hearing proceeded and after the conclusion of all testimony, the judge, sua sponte, raised a concern regarding the belated filing of the State's waiver application and requested supplemental submissions on the issue. In a letter brief, the State candidly admitted its error but stated that the

> incorrect calculation on the State's part was not deceitful, intentional, or meant to circumvent the deadlines established in N.J.S.A. 2A:4A-26.1 or Rule 5:22-2a. Nor was it meant to impact the juvenile's ability to defend his cases. It was, quite candidly, a technical mistake on the State's part in determining the deadline.

After the parties submitted their briefs, the judge recused himself, citing an undisclosed "circumstance beyond the [c]ourt's control." The matter was thereafter transferred to a second motion judge.

It is unclear from the record why the second judge did not address the consequence of the State's untimely waiver application as a threshold matter. Instead, the parties appeared before the second judge to address whether the court would rely on the transcripts from the original waiver hearing, or if a second hearing with the re-introduction of previously admitted evidence was necessary. Defendant's counsel requested the matter be reheard with live testimony so that the judge could make credibility determinations and consider the evidence with a "fresh set of eyes." The court agreed and conducted a second hearing.

The State again conceded it had miscalculated the sixty-day deadline for filing the waiver application. The parties nevertheless proceeded with the hearing, with the State presenting the responding police officer and neighbors who heard the gunshots on April 16, 2020. A.G.'s psychological expert did not testify.

After the conclusion of the second hearing, the judge issued an oral decision denying the State's application, concluding it was indisputably late and

5

the State failed to establish good cause. Relying on principles of statutory interpretation, the judge explained that the deadline stated in N.J.S.A 2A:4A-26.1 is "mandatory." He further reasoned that the State failed to establish good cause because "the circumstances presented [. . .], simple inadvertence, not occasioned by maliciousness or deceitfulness, are incompatible with the [good cause] standard for seeking extension under the waiver statute." The judge further noted "[t]he relief requested by the State here is not trivial. It seeks the relaxation of a deadline for filing a motion of substantial import to the juvenile for reasons not authorized under the waiver statute."

The State moved for a stay pending appeal. Defendant's counsel objected and also requested A.G. be released to the custody of his family. The court granted a stay of the trial pending appeal but detained A.G. The judge also supplemented his oral decision with a written opinion.

After the State filed a notice of motion for leave to appeal, the judge vacated the stay pending appeal and scheduled a trial date. We granted the State's motion for leave to appeal and stayed the trial pending appeal.

II.

We typically review waiver decisions for an abuse of discretion. State in the Interest of V.A., 212 N.J. 1, 25 (2012). A reviewing court looks to "whether

the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constitute[s] a clear error of judgment in all of the circumstances." State in the Interest of J.F., 446 N.J. Super. 39, 51–52 (App. Div. 2016) (quoting State v. R.G.D., 108 N.J. 1, 15 (1987)).

We recognize the issue on appeal is more nuanced, as the motion judge did not rule on the merits of the waiver application. However, we also review a trial court's determination regarding the existence or absence of good cause under an abuse of discretion standard. See State v. Stypulkowski, 176 N.J. Super. 524, 528 (App. Div. 1980) (applying an abuse of discretion standard of review to a good cause determination for resentencing).

III.

Before us, the State argues, as it did before both motion judges, that it satisfied the good cause standard under N.J.S.A. 2A:4A-26.1 and its motion to extend the waiver deadline should have been granted in light of the totality of circumstances, which included A.G.'s willing participation in the waiver proceedings without objection. Further, it contends "there is no assertion of prejudice to the juvenile, nor has the State's inadvertent miscalculation impacted the timeline of the subsequent waiver proceedings in any way."

A.G. disagrees. He maintains that his notice that the State intended to seek his waiver to adult court and his participation in the ensuing proceedings is irrelevant, as the sixty-day requirement for the State to timely file its application is immutable, as clearly established in the statute. We agree with the State and conclude that the judge abused his discretion when he found that the State failed to establish good cause under the circumstances.

N.J.S.A. 2A:4A-26.1(a) provides, in pertinent part:

> A prosecutor seeking waiver of jurisdiction of a juvenile delinquency case by the Superior Court, Chancery Division, Family Part to an appropriate court and prosecuting authority without the consent of the juvenile shall file a motion within [sixty] days after the receipt of the complaint, which time may be extended for good cause shown.
>
> [N.J.S.A. 2A:4A-26.1(a) (emphasis added).]

Rule 5:22-2(a) also establishes a sixty-day deadline for waiver of jurisdiction by the Family Part and possible extension with "good cause shown." Good cause is not defined in the statute or the Rule, however.

We have previously noted "it is impossible to lay down a universal definition of good cause . . . or an all-inclusive and definitive catalogue of all of the circumstances to be considered by a court in determining whether there is good cause." Ullmann v. Hartford Fire Ins. Co., 87 N.J. Super. 409, 414 (App.

A-2549-20

Div. 1965). We have also characterized good cause as an "amorphous term . . . 'difficult of precise delineation.'" Ghandi v. Cespedes, 390 N.J. Super. 193, 196 (App. Div. 2007) (quoting Delaware Valley Wholesale Florist, Inc. v. Addalia, 349 N.J. Super. 228, 232 (App. Div. 2002)); see also Templeton Arms v. Feins, 220 N.J. Super. 1, 21 (App. Div. 1987) ("The good cause standard, then, is flexible, taking its shape from the particular facts to which it is applied."). Accordingly, "[w]hat constitutes good cause or delay will depend upon the circumstances." State v. Del Fino, 100 N.J. 154, 160 (1985).

When evaluating good cause in the context of a late filing, New Jersey courts have considered several factors. These include: the party's good faith, State in Int. of J.W., 287 N.J. Super. 157, 161 (Ch. Div. 1995); the nature and foreseeability of the delay, Martindell v. Martindell, 21 N.J. 341, 349–50 (1956); prejudice to the adverse party, State in Int. of J.S., 272 N.J. Super. 338, 343–45 (Ch. Div. 1993); and whether granting a good cause exception comports with the overall purpose of the applicable statute, Burns v. Belafsky, 326 N.J. Super. 462, 471 (App. Div. 1999), aff'd, 166 N.J. 466 (2001).

In State in Interest of J.W., the Chancery Division permitted the State to extend the then thirty-day deadline for filing a waiver application when venue of the matter was transferred to another county three months after the original

complaint was filed.[2] J.W., 287 N.J. Super. at 161. The court concluded that waiver applications "should not be precluded due to a technicality," particularly where the prosecutor "acted diligently in filing a motion seeking waiver within five days after its receipt of the complaint" in the new venue. Id. at 162–63; see also State v. McIntyre-Caulfield, 455 N.J. Super. 1, 11 (App. Div. 2018) (holding defendant's good faith belief that the civil claimant would later use her guilty plea as an admission of civil liability was sufficient "in-and-of-itself to establish good cause"); Templeton, 220 N.J. Super. at 21 ("Good cause is distinct from good faith, although good faith is relevant in evaluating good cause.").

Similarly, in State ex rel. R.C., 351 N.J. Super. 248, 262 (App. Div. 2002), the State filed a juvenile waiver application without attaching a written statement of reasons required by the recently promulgated Attorney General Guidelines under N.J.S.A. 2A:4A-26(f). The juvenile argued that the State's failure to comply with its statutory obligations rendered the motion fatally defective and the State failed to establish good cause to submit the statement after the thirty-day deadline. Id. at 260–261. We disagreed and concluded that

---

[2] State in Interest of J.W. and State ex rel. R.C. addressed waiver applications prior to the 2016 amendments to the waiver statute, which changed the deadline for filing a waiver application from thirty days to sixty days.

"the [p]rosecutor's failure to fully understand and comply with the requirements of [the new statute] was excusable" and the "failure to comply with the procedural requirements . . . should not foreclose" a waiver to adult court.  Id. at 261–62.

In Martindell v. Martindell, 21 N.J. 341 (1956), our Supreme Court considered the nature and foreseeability of a delay where an attorney inadvertently failed to file a notice of appeal within the time period required by the Rules.  The Court held that inadvertence of counsel may justly be deemed to constitute good cause where the delay does not prejudice the adverse party and a rational application under the circumstances favors a determination that provides justice to the litigant.  Id. at 349; see also Belafsky, 326 N.J. Super. at 471 (noting that "[w]hile carelessness and inadvertence on the part of an attorney is insufficient grounds for the establishment of excusable neglect, such is not necessarily the case when it comes to a determination of whether good cause exists to excuse late filings.").

We also conclude that any good cause determination under N.J.S.A. 2A:4A:-26.1 must consider the prejudice that may visit not only upon the State, but upon the juvenile considered in the context of a juvenile's due process rights and the attendant procedural protections because of "the gravity of the waiver

11                                                      A-2549-20

decision."  State in Int. of Z.S., 464 N.J. Super. 507, 513–14 (App. Div. 2020).

In this regard, we have recognized that a juvenile waiver hearing is a "'critically

important' action determining vitally important statutory rights of the juvenile."

State in the Interest of R.L., 202 N.J. Super. 410, 412 (App. Div. 1985) (quoting

Kent v. United States, 383 U.S. 541, 556 (1966)); see also State v. J.M., 364

N.J. Super. 486, 491, 496 (App. Div. 2003) (finding that the accused juvenile

has the right to testify at his own hearing because he could lose the "'protective

and rehabilitative possibilities available to the Family Part'") (quoting R.G.D.,

108 N.J. at 5).

In State in Interest of J.S., the court held that a two-year delay of a

juvenile's waiver hearing did not result in any prejudice or violate the juvenile's

due process rights where he could not have proven likelihood of his

rehabilitation by age nineteen, which would have shifted the burden of proof to

the juvenile.  272 N.J. Super. at 345–46.  Similarly, in J.W., the court found that

the juvenile suffered no "actual[] prejudice" when "the transfer of venue was

routine and ordinary [and] the decision to change venue was mutually agreed to

by both parties."  J.W., 287 N.J. Super. at 162.

Finally, in evaluating the existence or absence of good cause, we

necessarily consider the overall purpose of the juvenile waiver statute.  In that

12

regard, we note the statute "entails the transfer of jurisdiction from the Family Part to the Criminal Part," subjecting juveniles to "adult criminal punishment if found guilty of the charged offenses." Z.S., 464 N.J. Super. at 512–13. This exposes the juvenile "to much more severe punitive sanctions, often including lengthy prison terms and mandatory periods of parole ineligibility." Id. at 513. While the statute makes it "easier to waive minors . . . to the Criminal Part if they were charged" with serious offenses, the State's waiver application must sufficiently "consider all of the statutory factors and the circumstances fully and not arbitrarily." Id. at 514, 533.

Against the aforementioned standard of review and legal principles, we analyze the State's two-day delay in filing its waiver application and are satisfied that the State acted in good faith throughout the waiver proceedings. The State informed A.G. and his counsel that it intended to seek a waiver and negotiated with him based upon that understanding and the parties' mutual, incorrect belief that the deadline for the waiver application was September 17, 2020.

As the State accurately set forth in its letter brief to the court, its miscalculation was neither "deceitful, intentional, [n]or meant to circumvent the deadlines established in N.J.S.A. 2A:4A-26.1 or Rule 5:22-2(a)." While a party's good faith conduct is not "in-and-of itself" sufficient to establish good

cause, see McIntyre-Caulfield, 455 N.J. Super. at 11, the State's lack of malfeasance weighs in favor of a good cause finding.

The nature and foreseeability of the delay also militates toward a finding of good cause. We note that the delay was only two days after the original deadline and the State acknowledged that the delay was not "meant to impact the juvenile's ability to defend his case[]," a fact borne out by the record. As noted, neither party recognized the filing was late until the deadline had passed and, in any event, defendant's counsel had requested an extension of the waiver deadline to prepare A.G.'s defense.

Further, although the State would clearly be prejudiced if it was precluded from filing its waiver application, we discern no similar prejudice to the defendant. As noted, any prejudice analysis as it effects a juvenile should focus on whether the juvenile has been afforded all procedural safeguards. Here, defendant has been provided all opportunities to be heard and to defend himself throughout the waiver proceedings. In any event, a remand in this case will require the court to make all necessary substantive findings as to the merits of defendant's waiver to adult court.

Finally, the overall purpose of the statute is effectuated by permitting the State to file its waiver application two days beyond the statutory deadline. Such

relief is consistent with the objectives of N.J.S.A. 2A:4A-26.1, which permits a merits-based hearing for juveniles who commit serious crimes.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION