FASCIALE, J.A.D.
*4 This is a tragic case involving the death of an infant that occurred after defendant placed him on his stomach for a nap in her daycare-home business. Two lawsuits resulted from the incident. The State charged defendant with second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2) ; and the infants' parents filed a civil lawsuit against defendant seeking money damages.
The State consented to defendant's admission into pre-trial intervention (PTI), and agreed to drop the charges if she successfully completed the program. Enrollment into PTI, however, required that defendant plead guilty because of the second-degree charge. Before pleading guilty, defendant's insurance company disclaimed coverage in the civil matter. Without insurance-and a *5 civil reservation-defendant faced disastrous financial consequences if she pled guilty because the parents could use her plea as an admission of liability. These consequences created a genuine obstacle to resolving the criminal charge.
Defendant overcame that impediment by relying on Rule 3:9-2 and requesting, without opposition from the State, that her guilty plea not be evidential in the civil dispute. Defendant argued that the consequences of her guilty plea in the civil case-likely devastating financial ruin because she was uninsured-constituted good cause under the rule. The judge denied her request and entered the order under review.
*174 The legal question-when enrollment into the PTI program is contingent on a defendant pleading guilty to a second-degree charge-is whether the civil consequences of wreaking devastating personal financial havoc on a defendant constitutes good cause under Rule 3:9-2. We hold that such a financial circumstance establishes good cause permitting a civil reservation. We emphasize that the civil reservation here eliminated the obstacle to avoiding an unnecessary criminal trial against defendant, who feared that the civil claimants would later use her plea of guilty as a devastating admission of civil liability.
Applying a de novo review to this legal question, State v. Nash, 212 N.J. 518, 540-41, 58 A.3d 705 (2013), we conclude that the judge erred by denying defendant's request to plead guilty with a civil reservation. We therefore reverse.
I.
The facts are undisputed. On December 1, 2015, the five-month-old infant died. Before the State filed the charge, the parents' first civil attorney notified defendant that he represented the parents, and directed defendant to forward his representation letter to her "insurance company or legal representative." Defendant complied.
About a week after receiving the letter from the civil attorney, the State charged defendant with the offense. According to defendant's *6 merits brief, the State's theory "centered on the admitted fact that defendant had placed the infant on his stomach for a nap." Along these lines, defense counsel remarked in the brief that the American Academy of Pediatrics, since the 1990s, has recommended that infants sleep on their backs in an attempt to reduce infant deaths classified as Sudden Infant Death Syndrome. The cause of the tragic death, however, is not before us.
In July 2016, a senior claims representative for defendant's insurance company-relying on various exclusions in the policy-issued a letter denying insurance coverage and refusing to defend defendant in any civil suit arising from the incident. Without waiving the insurance company's rights to rely on additional exclusions in the policy, she explained that no insurance coverage existed because the incident occurred "out of business pursuits in [defendant's] home." She also referenced other sections in the policy that would purportedly justify the insurance company's position. The claims representative "strongly urged [defendant] to retain personal counsel, solely and completely at [her] own expense, to protect [her] rights and interests."
Approximately three weeks later, a new civil attorney wrote defendant. He explained that the parents retained his law firm to represent them and the estate of the infant. The new attorney instructed defendant not to destroy any video, surveillance, or other evidence from the accident scene, and that if she did, defendant may receive sanctions for spoliation of evidence. As to the extent of the civil damages proximately caused by the incident, he added they were "yet unknown."
At some point, defendant applied for admission into the PTI program. In January 2017, the criminal division manager recommended rejection of the PTI application, and an assistant prosecutor issued a rejection letter in February 2017. But the parties in the criminal case engaged in further negotiations and eventually, in September 2017, the prosecutor consented to defendant's enrollment in the PTI program for a period of thirty-six months. Although the parents initially objected to PTI, the record reflects *7 they were ultimately unopposed to defendant's enrollment into the program. *175 The prosecutor notified defendant that-in addition to the standard PTI conditions-she had to plead guilty to the second-degree charge. For second-degree offenses, such a requirement is also mandated by N.J.S.A. 2C:43-12(g)(3)(a). A few days later, on September 14, 2017, the parties appeared before the judge at the plea hearing. The parents were there and participated in the hearing by giving a statement.
Defendant filled out her plea forms and specifically raised the subject of pleading guilty with a civil reservation under Rule 3:9-2. The filled-out forms reflect that the parties acknowledged that the State would dismiss the criminal charges if defendant successfully completed PTI-which is also consistent with N.J.S.A. 2C:43-12(g)(3) -and that "counsel [is] to request [a] civil reservation." At the end of plea hearing, the judge addressed defendant's Rule 3:9-2 request. He "signed off" on the request, but then reserved decision. The following colloquy occurred:
[Judge:] I understand there is a request for a civil reservation.... I don't know if the State is going to take any further argument or application with respect to that.
[Assistant Prosecutor:] Judge, we'll submit to the [c]ourt on that issue.
[Judge:] ... If the family has counsel, they may wish to be heard on that ... and I'll give them the opportunity to do so. So, I'll ... carry that for ten days before I make a ruling in case any additional documentation is submitted.
I've signed off on the order.
[Emphasis added.]
In the State's merits brief, an assistant prosecutor (without obtaining an order permitting the supplementation of the record) supplied us with a copy of an August 11, 2017 email she wrote to defense counsel-before the plea hearing and preparation of the plea forms-stating that the State could not agree to the civil reservation. But at the plea hearing, as the quoted colloquy reflects, the State submitted on the issue. Although the infant's parents later objected to the reservation, the State never filed opposition.
*8 In October 2017, the judge issued the order under review denying her request. One month later, the parents filed their civil wrongful-death complaint against defendant, as well as a declaratory judgment suit against the insurance company. They alleged that the insurance company wrongfully denied coverage, a defense, and indemnification for the incident.
In December 2017, a senior claims representative wrote defendant reiterating that there existed no insurance coverage for the parents' claim for damages related to the incident. She explained that the "claim falls squarely in the purview of the 'business exclusion' in the [p]olicy." It is undisputed that defendant operated the daycare business out of her home on the day of the incident.
II.
On appeal, defendant maintains that the judge erred as a matter of law. Defendant contends that she established good cause to accept her guilty plea with a civil reservation that it not be evidential in the civil lawsuit. Defendant adds that she showed good cause especially because her plea deal, and the statute, reflect the State would drop the charges if she successfully completed PTI. Defendant urges us to reverse the order.
It is well known that guilty pleas in criminal proceedings are evidential in a related civil case as a statement by a party under N.J.R.E. 803(b)(1). Maida v. Kuskin, 221 N.J. 112, 125, 110 A.3d 867 (2015). However, "[f]or good cause shown[,] the *176 court may, in accepting a plea of guilty, order that such plea not be evidential in any civil proceeding." R. 3:9-2. "The purpose of [Rule 3:9-2] is to avoid an unnecessary criminal trial of a defendant who fears that a civil claimant will later use [her] plea of guilty as a devastating admission of civil liability." Stone v. Police Dep't of Keyport, 191 N.J. Super. 554, 558, 468 A.2d 442 (App. Div. 1983). Defendant realized this purpose by pleading guilty to the charge.
Case law has defined two examples of what constitutes good cause under Rule 3:9-2. First, " 'good cause' exists for a no-civil-use *9 agreement when such an agreement is necessary to remove an obstacle to a defendant's pleading guilty to a criminal charge." State v. Haulaway, Inc., 257 N.J. Super. 506, 508, 608 A.2d 964 (App. Div. 1992). Second, good cause may "be shown to grant a reservation where the civil consequences of a plea may wreak devastating financial havoc on a defendant." State v. Tsilimidos, 364 N.J. Super. 454, 459, 837 A.2d 373 (App. Div. 2003). Defendant showed good cause under both examples.
The judge's ruling presented a Hobson's choice for defendant-either forgo PTI and take her chances at a criminal trial, or have the guilty plea be evidential in the civil case and face a ruinous judgment. The purpose of Rule 3:9-2, however, obviates such a choice. We disagree with the judge's rationale in several important respects.
The judge observed there was no pending civil lawsuit at the time of the plea. That is true. But the plain text of the rule, and the case law interpreting it, does not make its applicability dependent on a filed lawsuit. The lack of a pending civil lawsuit is not determinative, especially here where the statute of limitations (SOL) would not run for approximately nineteen and one-half years. N.J.S.A. 2A:14-21 (applying the SOL to an action on behalf of a minor). Making eligibility for a Rule 3:9-2 request dependent on the filing of a civil complaint-something that is beyond the control of a defendant-is beyond the scope of the rule.
Rule 3:9-2 applies to a defendant who "fears that a civil claimant will later use" the plea as an admission of civil liability. Stone, 191 N.J. Super. at 558, 468 A.2d 442. The existence of a good faith fear-that a civil claimant will later use the guilty plea as an admission of liability in a civil case-triggers the rule. That fear is readily apparent here: on behalf of the parents and estate, two separate civil attorneys wrote defendant; one sent her a letter even before the State filed the second-degree charge. They directed defendant to notify her insurance company or legal representative regarding the incident; and the second attorney informed defendant that destruction of any evidence subjected her to a *10 spoliation claim, and that the damages in the civil case were "yet unknown." And as it turned out, defendant received the civil complaint about a month after the judge entered the order.
Although the judge remarked that defendant did not provide evidence of her pre-existing financial condition, the rule and case law require no such showing. Nevertheless, the disclaimer by her insurance company, on two occasions, for the claims directly associated with the incident, as well as the insurance company's repeated refusal to defend defendant in the eventual civil action, demonstrated the precarious financial situation that defendant faced. Under the facts of this case, the self-evident financial predicament supported defendant's good faith basis that a civil lawsuit would wreak financial havoc.
*177 The judge based his decision in part on defendant's failure to challenge the insurance company's disclaimer position by not filing a declaratory judgment lawsuit. Imposing such a requirement would be inconsistent with the purpose of Rule 3:9-2. Like the SOL, requiring defendant to adjudicate an insurance-coverage declaratory judgment lawsuit could take years to resolve. Certainly the reservation accomplishes the purpose of the rule, which is designed in part to "eliminate an obstacle to a plea and avoid an unnecessary criminal trial." Tsilimidos, 364 N.J. Super. at 459, 837 A.2d 373.
The judge concluded the request was premature because defendant had not yet completed PTI. But the failure to complete the program is unrelated to her fear that the civil claimants would use the plea as an admission of liability. Defendant faces serious consequences in the criminal case-including a presumption of imprisonment of up to ten years, N.J.S.A. 2C:43-6(a)(2) -if she does not successfully complete PTI. One has nothing to do with the other. Waiting until the expiration of the three-year PTI term before adjudicating her Rule 3:9-2 request is not an option for many reasons.
*11 Like conditioning eligibility for making the civil reservation request on the civil claimants first filing a personal injury complaint, or making eligibility for the reservation dependent on her own filing of a declaratory judgment lawsuit, staying defendant's request for the completion of her PTI three-year term is fraught with practical problems. For instance, both the criminal and civil cases would likely be stayed pending completion of PTI. The delays would implicate defendant's constitutional speedy-trial rights in the criminal case, witness memories in both actions would lapse over time, and there would be an enormous cost to the civil claimants and defendant-financially and emotionally-of having the stayed lawsuits remain unresolved.
Finally, the judge determined that there existed no evidence that defendant bargained for the civil reservation as part of her plea. But the plea forms verify that the civil reservation was a part of the negotiations. Importantly, when questioned at the plea hearing about defendant's request for a civil reservation, the State "submitted" on the issue. It voiced no objection. Thus, the State did not indicate in the plea forms or on the plea record that it objected. And it did not file opposition after the judge "signed off" on the order, during the ten-day period while he was waiting for the family's objection. Nevertheless, defendant showed her good faith belief that the guilty plea would wreak devastating financial havoc, which is sufficient in-and-of-itself to establish good cause.
Reversed.