**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4676-17T3

STATE OF NEW JERSEY,

     Plaintiff,

v.

BEDNAR LANDSCAPE
SERVICES, INC.,

     Defendant-Respondent.

_____

ESTATE OF OSCAR PORTILLO,
by the Administrator Ad Prosequendum,
JUAN CARLOS MONTOYA,

     Intervenor-Appellant.

_____

        Argued May 9, 2019 – Decided July 3, 2019

        Before Judges Simonelli, Whipple and Firko.

        On appeal from the Superior Court of New Jersey, Law Division, Morris County, Accusation No. 18-01-0064.

        Bernard J. Recenello argued the cause for appellant (Bernard J. Recenello and Nicholas John Du Bois, attorneys; Nicholas John Du Bois, on the briefs).

John J. O'Reilly argued the cause for respondent (Mc Elroy Deutsch Mulvaney & Carpenter, LLP, attorneys; John J. O'Reilly, on the brief).

PER CURIAM

Intervenor-Appellant, the Estate of Oscar Portillo (Intervenor), appeals from a May 3, 2018 order for civil reservation. For the reasons that follow, we affirm.

This matter arose from a fatal workplace accident that tragically resulted in the deaths of Oscar Portillo and Selvin Zalaya. Both men worked as laborers for defendant Bednar Landscape Services, Inc. (Bednar) and were killed when a thirteen-foot-deep trench collapsed on them. The trench was constructed in violation of Occupational Safety and Health Administration (OSHA) regulations.

Both OSHA and the Morris County Prosecutor's Office conducted an investigation. The OSHA matter was resolved subject to a civil reservation of rights.[1] Two wrongful death and survivorship actions were filed against Bednar and two of its corporate principals, Keith Bednar and Christopher Liberatore. The two civil actions were consolidated and later dismissed without prejudice. The Intervenor refiled its claim.

---

[1] The exact terms of the OSHA settlement are not a part of the record.

A-4676-17T3

The State and Bednar reached an agreement. The two corporate principals were diverted to pre-trial intervention (PTI). Bednar, as a corporate entity, waived indictment and pled guilty under an accusation charging one count of fourth-degree causing or risking widespread injury or damage, N.J.S.A. 2C:17-2(d)(1). The factual basis for the corporate plea was provided by resolution signed by Keith Bednar pursuant to <u>Rule</u> 3:7-10(c). The court accepted the plea, and on March 9, 2018, sentenced Bednar to two years probation and ordered $50,000 in restitution to the families.[2] As part of the plea negotiation, the State offered no objection to Bednar seeking a civil reservation, however, the Intervenor objected. The trial judge reserved decision on the civil reservation issue and asked the parties to return on May 3, 2018, for oral argument.

At the hearing, Bednar argued a civil reservation was necessary to protect the corporation from financial ruin. Bednar's counsel represented that in connection with the civil suits, the Bednar principals had sued their insurance carriers for coverage. Bednar argued a civil reservation would convince its carriers to provide coverage because the guilty plea to reckless acts would not be introduced in a civil suit. If coverage was disclaimed, and a civil judgment was entered against it, Bednar assuredly faced bankruptcy.

---

[2] Bednar also agreed to pay $77,000 pursuant to the OSHA settlement.

The Intervenor argued a civil reservation would essentially preclude holding Bednar civilly liable. Considering the OSHA settlement was subject to a civil reservation and both corporate principals retained their Fifth Amendment privilege while enrolled in PTI, the Intervenor asserted it was unable to conduct meaningful discovery. Moreover, the Intervenor argued Bednar was not entitled to a civil reservation because financial havoc alone is not sufficient to show good cause.

The trial judge found Bednar demonstrated good cause and entered a civil reservation order accordingly. The judge accepted Bednar's contention that its insurance carriers would be more likely to provide coverage if they knew the guilty plea would not be introduced in a civil proceeding. The court rejected the Intervenor's Fifth Amendment concerns because the corporation waived the privilege by entering into a guilty plea. Once the corporate principals concluded PTI, they could no longer assert the privilege. Moreover, the judge explained Bednar did not have to demonstrate actual financial havoc to satisfy the good cause standard but merely its potential. This appeal followed.

We defer to "factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). Whether a civil reservation is

supported by good cause is a legal question subject to de novo review. State v. McIntyre-Caulfield, 455 N.J. Super. 1, 5 (App. Div. 2018).

Guilty pleas in criminal proceedings are admissible in related civil cases as statements of a party opponent under Rule 803(b)(1). Maida v. Kuskin, 221 N.J. 112, 125 (2015). However, "[f]or good cause shown the court may, in accepting a plea of guilty, order that such plea not be evidential in any civil proceeding." R. 3:9-2. "The purpose of [Rule 3:9-2] is to avoid an unnecessary criminal trial of a defendant who fears that a civil claimant will later use [its] plea of guilty as a devastating admission of civil liability." McIntyre-Caulfield, 455 N.J. Super. at 8 (first alteration in original) (quoting Stone v. Police Dep't of Keyport, 191 N.J. Super. 554, 558 (App. Div. 1983)).

After the trial court entered the May 3, 2018 civil reservation order, we decided McIntyre-Caulfield, which clarified the meaning of "good cause." Id. at 8-9. "First, '"good cause" exists for a no-civil-use agreement when such an agreement is necessary to remove an obstacle to a defendant's pleading guilty to a criminal charge.'" Ibid. (quoting State v. Haulaway, Inc., 257 N.J. Super. 506, 508 (App. Div. 1992)). "Second, good cause may 'be shown to grant a reservation where the civil consequences of a plea may wreak devastating financial havoc on a defendant.'" Id. at 9 (quoting State v. Tsilimidos, 364 N.J.

Super. 454, 459 (App. Div. 2003)). Here, the trial court found the threat posed by Bednar's insurance carriers' potential disclaimer, but for a civil reservation, constituted "financial havoc."

We reject the Intervenor's arguments that Bednar needed to demonstrate actual financial harm, not merely its potential, and that good cause refers to personal, not corporate financial havoc. In McIntyre-Caulfield, we explained that a defendant seeking a civil reservation need only show the existence of a good faith fear of financial havoc, not its actuality. Id. at 9-10. This may be demonstrated, as was the case here, by an insurance carrier disclaiming coverage. See ibid.

Here, we discern no error by the judge crediting and relying on Bednar's representation its insurance carriers would be more likely to indemnify if Bednar obtained a civil reservation. The purpose of the rule would be defeated if, as the Intervenor suggests, Bednar needed to show more concrete evidence of financial harm. If Bednar was forced to wait until a civil judgment is entered against it to seek a civil reservation order, it would already be too late.

We have carefully reviewed the Intervenor's remaining arguments and have determined they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-4676-17T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION