**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3110-19

ESTATE OF OSCAR PORTILLO
by the Administrator Ad
Prosequendum JUAN CARLOS
MONTOYA,

     Plaintiff-Appellant,

v.

BEDNAR LANDSCAPING
SERVICES, INC., CHRISTOPHER
LIBERATORE, PETER LIBERATORE,
and KEITH BEDNAR,

     Defendants-Respondents.

_____

ESTATE OF SELVIN ZELAYA
by the Administratrix Ad Prosequendum
MARIA MARTA RIVERA RODRIGUEZ
and MARIA MARTA RIVERA
RODRIGUEZ, INDIVIDUALLY,

     Plaintiff-Appellants,

v.

BEDNAR LANDSCAPING
SERVICES, INC., CHRISTOPHER

LIBERATORE, PETER LIBERATORE,
and KEITH BEDNAR,

Defendants-Respondents.
_____

Argued May 3, 2021 – Decided July 8, 2021

Before Judges Sabatino, Currier and DeAlmeida (Judge Sabatino concurring).

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket Nos. L-1770-18 and No. L-1787-18.

Evan M. Padilla argued the cause for appellant Estate of Portillo (Zajac & Arias, LLC, attorneys; Evan M. Padilla, of counsel and on the joint briefs).

David M. Fried argued the cause for appellant Estate of Zelaya (Blume, Forte, Fried, Zerres & Molinari, PC, attorneys; David M. Fried, of counsel and on the joint briefs; Brian E. Mahoney, on the joint briefs).

Aldo J. Russo argued the cause for respondents (Lamb Kretzer, LLC, attorneys for respondent Bednar Landscaping Services, Inc.; Methfessel & Werbel, attorneys for respondents Christopher Liberatore, Peter Liberatore and Keith Bednar; Robert D. Kretzer and Paul J. Endler, on the joint brief).

PER CURIAM

A-3110-19

In these consolidated wrongful death actions, the Estates of Oscar Portillo and Selvin Zelaya[1] instituted suit against their decedents' employer after decedents were killed when a trench collapsed on top of them while installing a drainage system. Because plaintiffs have not demonstrated an intentional wrong required to vault the statutory bar to a third-party action under the Workers' Compensation Act (WCA), N.J.S.A. 34:15-8, we affirm the Law Division's grant of summary judgment to defendants.[2]

The owners of a private residence hired defendants to install a French drain along the exterior perimeter of their home. Keith Bednar (Bednar) designed the project. He testified during his deposition that he learned how to perform drainage work by observing others and through his years of hands-on experience.

Zelaya was the foreman on the job site and supervised the other employees. He had worked on three or four previous drainage projects requiring the excavation of a trench that was deeper than five feet. On this job, Bednar

---

[1] We refer to the Estates and decedents collectively as "plaintiffs."
[2] Defendant Keith Bednar founded Bednar Landscape Services, Inc. (improperly pled as Bednar Landscaping) more than twenty years ago and is the company's president. Peter and Christopher Liberatore serve as the company's vice president and secretary respectively. We refer to them collectively as defendants.

A-3110-19

instructed Zelaya to dig a nine-foot-deep, 300-foot-long trench, approximately two to three feet in width.

Bednar estimated his business had excavated trenches deeper than five feet five to eight times, stating "[i]t wasn't something we did every day." Defendants had never utilized a trench box, wood shoring, or any other method to secure the sides of the trenches on any of the prior projects or on this job.[3] Bednar testified he had gone into unprotected trenches that were deeper than his height "[t]en times" in his lifetime. He said it never occurred to him that the trench could collapse or cause injury to him or others working in the trench. He also stated he never thought about using a trench box.

Bednar testified that neither he nor any other officer or employee of the company had taken an Occupational Safety and Health Administration (OSHA) safety course before decedents' accident. Following these events, all of the foremen took safety courses.

---

[3] Bednar did recall the business using a trench box many years earlier when an employee was digging a hole in very sandy soil to fill with gravel. The employee informed Bednar that he could only dig a certain amount before the sand would start to cave in at the bottom and collect around his ankles. The employee recommended the use of a "trench thing[] . . . ." Bednar was not present at the site, did not know where the employee obtained the trench box, and did not see it in use.

4

Decedents' accident occurred during the second week of work on the job. Zelaya operated the excavating machine used to dig the trench. When the desired depth was reached, he and other employees descended into the trench with hand tools and laid down pipe and gravel. Because there had been some rain, pumps evacuated groundwater from the trench while the workers installed the pipe.

The French drain was installed in sections. Once the twelve-foot drainage pipe was set in place, the open trench was backfilled, and an adjoining section would be dug.

Bednar stated he went to the job site only when Zelaya asked him to come. He recalled being on site three days before the day of the accident and observing his employees in the nine-foot-deep trench. Christopher Liberatore went to the job site approximately five times solely to deliver gravel. Peter Liberatore handled all of the office work.

On October 1, 2014, at approximately 3:00 p.m., Portillo and a co-worker were working in the trench when it collapsed on Portillo.[4] After Zelaya climbed into the trench to assist Portillo, the trench collapsed a second time and Zelaya

---

[4] The co-worker in the trench with Portillo estimated the trench was fourteen feet deep in the area where they were working.

A-3110-19

was buried in the falling soil. Portillo and Zelaya were pronounced dead at the scene.

In its investigation following the accident, OSHA identified multiple violations of safety standards. Most pertinent, OSHA issued a willful violation citation because "[w]orkers installing a French drain system in a trench were exposed to crushing injuries in the [nine] to [thirteen] foot deep trench which was not adequately sloped or protected by shields or shoring." 29 C.F.R. §1926.652(a)(1) requires an employer to protect its workers from a trench collapse by using sloping, shoring, or trench boxes in a trench deeper than five feet.

The Morris County Prosecutor's Office also conducted an investigation. State v. Bednar Landscape Servs., No. A-4676-17 (App. Div. July 3, 2019) (slip op. at 2). The corporate principals were diverted to pre-trial intervention. Id. at 1. On January 18, 2018, Bednar Landscape waived indictment and pled guilty under an accusation charging one count of fourth-degree causing or risking widespread injury or damage, N.J.S.A. 2C:17-2(d)(1). Ibid. The factual basis for the corporate plea was provided in a resolution signed by Keith Bednar, as president. Ibid. The resolution was provided to the court by Bednar Landscape's agent and counsel.

6

The corporate entity was sentenced to two years' probation[5] and ordered to pay $50,000 in restitution to decedents' families. Ibid. Bednar Landscape also paid $77,000 in fines pursuant to its settlement agreement with OSHA. Ibid.

Bednar Landscape requested a civil reservation under Rule 3:9-2. The State did not object. However, the Estate of Portillo intervened and objected to the entry of a civil reservation. Ibid.

After hearing the parties' arguments, the trial court found Bednar Landscape had demonstrated good cause for the entry of a civil reservation. Id. at 1. We affirmed, finding it had shown good cause because the civil reservation was necessary to protect the corporation from financial ruin. Id. at 2. Relying on State v. McIntyre-Caulfield,[6] we noted "good cause may be shown to grant a reservation where the civil consequences of a plea may wreak devastating financial havoc on a defendant." Ibid. (internal quotation marks and citations omitted). We stated further that here, where the insurance carrier might disclaim coverage without a civil reservation in place, Bednar Landscape had

_____

[5] Probation monitored the required payments.

[6] 455 N.J. Super. 1 (App. Div. 2018).

demonstrated the "existence of a good faith fear of financial havoc . . . ." Ibid. (citing McIntyre-Caulfield, 455 N.J. Super. at 9-10).

After the close of discovery, Bednar Landscape moved for summary judgment, contending N.J.S.A. 34:15-8 barred plaintiffs' third-party claims because plaintiffs were collecting workers' compensation benefits and defendants had not committed an "intentional wrong."

In an extensive, well-reasoned written decision and accompanying order, the motion judge granted summary judgment on March 9, 2020. After reviewing the applicable statute and caselaw, the judge found that "a jury simply could not conclude that [d]efendant[s] [were] 'substantially certain' that [their] working conditions would cause great bodily harm or injury to one of [their] employees, which is a prerequisite to avoiding the exclusivity bar under the [WCA]."

Although the judge determined plaintiffs had presented "a very compelling case for recklessness or gross negligence", they could not demonstrate an "intentional wrong" or that defendants were "'substantially certain' of the harm that would result from allowing decedents to enter the trench without safeguards."

The motion judge also considered and rejected plaintiffs' argument that the corporate guilty plea sufficed to meet the "substantial certainty" test. The

court noted that neither corporate principal testified, and the factual basis referred to OSHA's finding of "reckless" conduct. The court stated: "'Reckless' is not enough to meet the 'substantial certainty' standard."

Following the grant of summary judgment to Bednar Landscape, the parties executed a consent order granting summary judgment to the individual defendants.

We review the grant of summary judgment de novo, applying the same legal standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (citation omitted). Therefore, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). We review issues of law de novo and accord no deference to the trial

judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

On appeal, plaintiffs argue the trial court erred in granting summary judgment. They assert the "record was rife with material and substantial disputes of fact, including credibility issues" which should have been reserved for consideration by a jury. In addition, plaintiffs contend they satisfied the intentional wrong standard required to exempt their claims from the WCA bar, permitting them to pursue common law tort claims.

The WCA is a "trade-off whereby employees relinquish[] their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffer[] injuries by accident arising out of and in the course of employment." Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985). "When, by either express or implied agreement, the parties have accepted the provisions of the [WCA], the agreement operates as an employee's surrender of other forms of remedies." Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 459 (2012) (citing N.J.S.A. 34:15-8). However, an employee can overcome the statutory bar if he or she can satisfy the exception for an intentional wrong. N.J.S.A. 34:15-8 provides:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or

otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

In Millison, our Supreme Court created the current "intentional wrong" framework and implemented a "substantial certainty" test. 101 N.J. at 178. The test requires an analysis of a "conduct" and a "context" prong. Id. at 178-79. The Court instructed:

> Courts must examine not only the conduct of the employer, but also the context in which that conduct takes place: may the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [WCA]?
>
> [Id. at 179 (emphasis omitted).]

To satisfy the intentional wrong exception, "a plaintiff must first establish the employer knew that its actions were substantially certain to result in injury or death to the employee." Hocutt v. Minda Supply Co., 464 N.J. Super. 361, 375 (App. Div. 2020). If that prong is met, "[t]he plaintiff must further show that the resulting injury and the circumstances of its infliction were more than a fact of life of industrial employment and plainly beyond anything the Legislature intended the WCA to immunize." Ibid.

The Millison Court directed that "the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the [WCA] is not circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty." 101 N.J. at 178.

In the wake of Millison, our Supreme Court has considered additional fact scenarios and provided guidance to distinguish negligent or reckless culpability from intentional wrong.

In Laidlow v. Hariton Mach. Co., Inc., the plaintiff employee severely injured his hand while operating an unguarded rolling mill. 170 N.J. 602, 606-07 (2002). The employer regularly removed the safety guard on the mill when its employees used the machine but replaced it prior to OSHA inspections. Id. at 608. The plaintiff and a co-worker reported two incidents to their supervisor when their hands were almost pulled into the machine and requested the restoration of the guard. Ibid. Their concerns and requests were ignored. Ibid. The Court found that the "conduct involving the intentional, and deceptively timed, engaging and disengaging of safety equipment . . . [satisfied the] conduct and context prongs . . . ." Van Dunk, 210 N.J. at 462 (citing Laidlow, 170 N.J. at 606-07).

In Crippen v. Cent. Jersey Concrete Pipe Co., the plaintiff employee suffocated and died after falling into a seventeen-foot-deep sand hopper. 176 N.J. 397, 399 (2003). The employer had been cited by OSHA for numerous serious violations that were not corrected prior to the plaintiff's accident. Id. at 401-03. The Court held that "a jury reasonably could conclude that defendant had knowledge that its deliberate failure to cure the OSHA violations would result in a substantial certainty of injury or death to one of its employees." Id. at 409.

The Court also determined that the plaintiff had satisfied the context prong. Id. at 411. The employer not only failed to remedy the safety hazards, contrary to an OSHA order, but also deceived OSHA into believing the violations had been corrected. Ibid. The Court noted that the defendant "'effectively precluded OSHA from carrying out its mandate to protect the life and health of [defendant's] workers.'" Ibid. (alteration in original) (quoting Laidlow, 170 N.J. at 621). The Court concluded the Legislature "never intended such conduct to constitute a part of everyday industrial life" nor would the Legislature expect this conduct to fall within the workers' compensation bar. Ibid.

In <u>Mull v. Zeta Consumer Prods.</u>, the Court considered a situation where the employer was aware of prior injuries and ignored citations for safety violations. 176 N.J. 385, 388 (2003). The Court concluded the plaintiff satisfied the conduct prong of the <u>Millison</u> test because OSHA had cited defendant for several safety violations, the defendant had removed multiple safety devices from the machine, another employee had sustained an injury operating the same equipment, and the defendant was aware employees repeatedly complained about safety concerns. <u>Id.</u> at 392.

The Court also found the context prong was satisfied, noting "[t]he Legislature would not have considered the removal of the [machine's] safety devices, coupled with the employer's alleged knowledge of the machine's dangerous condition due to prior accidents and employee complaints, in addition to OSHA's prior violation notices, 'to constitute simple facts of industrial life.'" <u>Id.</u> at 392-93 (quoting <u>Laidlow</u>, 170 N.J. at 622).

<u>Van Dunk</u> presented some facts similar to the case before us. There, the Court addressed the intentional wrong exception where an employee was injured in a collapsed unprotected trench. 210 N.J. at 453-54. The plaintiff volunteered to go into a twenty-foot-deep trench to flatten out filter fabric. <u>Id.</u> at 454. The supervisor instructed him not to do so because of the risk the trench might

14

collapse. Ibid. Nonetheless, as problems persisted, the supervisor in a moment of frustration told the plaintiff to enter the trench and fix the fabric. Ibid. The trench collapsed on top of plaintiff, causing severe injuries. Id. at 454-55.

During the OSHA investigation, the supervisor acknowledged he was aware of OSHA trench safety requirements and did not follow those standards. Id. at 455. That admission led OSHA to cite the company for a "willful" violation of the safety standards. Ibid. However, the Court found that classification of the OSHA violation as willful did not necessarily mean the conduct was an intentional wrong for purposes of the WCA. Id. at 468.

In determining plaintiff had not satisfied the conduct prong, the Court compared the nature of the trench collapse with the "more egregious circumstances" of prior cases. Id. at 471. The Court explained:

> What distinguishes Millison, Laidlow, Crippen, and Mull from the present matter is that those cases all involved the employer's affirmative action to remove a safety device from a machine, prior OSHA citations, deliberate deceit regarding the condition of the workplace, machine, or, in the case of Millison, the employee's medical condition, knowledge of prior injury or accidents, and previous complaints from employees.
>
> [Ibid.]

A-3110-19

The Court noted that the plaintiff's failure to satisfy the conduct prong was sufficient to bar the lawsuit. Nevertheless, the Court considered the context prong, concluding that it also had not been established. The Court explained:

> The separate consideration required by the context prong acts as an additional check against overcoming the statutory bar to a common-law tort action. It was added to the analysis to reinforce the strong legislative preference for the workers' compensation remedy. That preference is overcome only when it separately can be shown to the court, as the gatekeeper policing the [WCA]'s exclusivity requirement, that as a matter of law an employee's injury and the circumstances in which the injury is inflicted are 'plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [WCA].' In Millison, that threshold was only met by virtue of the physicians' intentional deception about the true status of employees' medical conditions when returning the employees to the hazardous worksite, not by the dangers present in the workplace itself due to the known presence of asbestos.
>
> [Id. at 473-74 (emphasis omitted) (citations omitted).]

The Court then applied those principles to the facts presented in the case before it, noting:

> [O]ne cannot reasonably conclude that the type of mistaken judgment by the employer and ensuing employee accident that occurred on this construction site was so far outside the bounds of industrial life as never to be contemplated for inclusion in the [WCA]'s exclusivity bar. While a single egregiously wrong act by an employer might, in the proper circumstances,

16

satisfy the intentional-wrong standard, not every intentional, or indeed willful violation of OSHA safety requirements constitutes a wrong that is 'plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [WCA].'

[Id. at 474 (quoting Millison, 101 N.J. at 179) (emphasis omitted).]

As stated, plaintiffs here must first establish defendants knew their actions were substantially certain to result in injury or death to decedents. Hocutt, 464 N.J. Super. at 376. Plaintiffs assert on appeal that defendants' conduct is similar to that of the employers in Crippen and Laidlow and they have demonstrated defendants had a substantial certainty of a deep trench collapse and a substantial certainty of death or injury from such a collapse. We disagree.

Here, defendants had excavated five to eight trenches deeper than five feet throughout the course of the company's twenty-year history. Their business rarely engaged in the excavation of trenches, while in Laidlow, the manufacturer operated the unguarded machine frequently and had engaged in its deceptive practices for over twelve years. 170 N.J. at 608.

In Crippen and Laidlow, the employers knew of the OSHA safety requirements and actively chose to ignore them. In Crippen, OSHA had cited the employer for safety violations. The employer failed to correct those

violations prior to the plaintiff's accident. Here, defendants testified they were unaware of OSHA's safety regulations concerning trenches. Their previous trench sites had not been inspected by OSHA. Nor had OSHA ever issued any citations to defendants for any violations of its safety regulations.

Unlike in <u>Laidlow</u>, <u>Crippen</u>, and <u>Mull</u>, plaintiffs cannot demonstrate defendants had knowledge regarding the unsafe trenching practice and a substantial certainty of the trench's collapse and foreseeable injury or death to its workers. To the contrary, defendants had previously undertaken projects where a deep trench was excavated without the required shoring or support and completed those projects without safety issues or incidents. Bednar testified he had gone into deep unprotected trenches multiple times in the past and never considered whether the trench could collapse. The record does not support plaintiffs' assertion that defendants knew their actions were substantially certain to cause injury or death.

Plaintiffs turn to another avenue to establish the conduct prong. They assert the corporate guilty plea demonstrates defendants knew their actions were substantially certain to cause injury or death to an employee. We again disagree.

Bednar Landscape pled guilty to N.J.S.A. 2C: 17-2(d)(1), which states: "A person who knowingly or recklessly fails to take reasonable measures to

prevent or mitigate widespread injury or damage commits a crime of the fourth degree, if: [h]e knows that he is under an official, contractual or other legal duty to take such measures . . . ." The judge read the factual basis for the guilty plea, which was contained in a resolution executed by Keith Bednar on behalf of the company as required under Rule 3:7-10(c). The resolution stated, in pertinent part:

> On or about October 1, 2014, Bednar Landscape was performing work at a customer's home . . . by installing a French drainage system around the customer's house. The French drains were being installed against the building's foundation in a trench . . . Bednar Landscape was excavating. The trench was supported on one side by the building's foundation. However the other wall of the trench was neither sloped nor protected by shields or shoring for the depth of trench as required by a specific OSHA standard.
>
> As a result of the reckless failure to protect the job site [in accordance] with the OSHA standards, there was a trench cave-in which caused two workers . . . to be trapped and to perish in the cave-in before they could be rescued by emergency personnel or by other co-workers who were also working at that location.

As stated, the trial judge granted a civil reservation; the order was affirmed by this court.

Under Rule 3:9-2, a court may allow a criminal defendant to take a civil reservation to prevent the guilty plea from being used against him in a

subsequent civil case. We have explained that the "purpose of the rule is to avoid an unnecessary criminal trial of a defendant who fears that a civil claimant will later use his plea of guilty as a devastating admission of civil liability." Stone v. Police Dep't of Borough of Keyport, 191 N.J. Super. 554, 558 (App. Div. 1983).

Plaintiffs contend there are inconsistencies between the deposition testimony of the individual defendants and the factual basis of the corporate plea that create issues of fact which undermine the motion judge's conclusion that defendants did not have substantial certainty of the dangers posed by the unguarded trench. And plaintiffs assert the civil reservation does not prevent them from using those inconsistencies to impeach defendants' knowledge regarding OSHA standards.

Specifically, plaintiffs highlight the contradiction between the individual defendants' professed lack of knowledge regarding the necessity of shoring a deep trench and the corporation's plea to an offense which states that the person "knows he is under an official, contractual or other legal duty to take" reasonable measures to prevent or mitigate injury or damage. N.J.S.A. 2C:17-2(d)(1).

We agree that, under certain circumstances, testimony given during an allocution may be used despite the entry of a civil reservation. See Stone, 191

N.J. Super. at 554 (holding the protection of R. 3:9-2 is waived where a plaintiff offers his own testimony to support a civil claim and that testimony is inconsistent with the testimony given to support his guilty plea to a criminal offense). However, those circumstances are not present here.

Under Stone, allocution testimony presented during a plea hearing may be used to impeach that person's testimony in a civil case if there are inconsistencies, even if there is a civil reservation. However, here there are no inconsistencies. None of the defendants testified during the plea hearing. The factual basis accepted for the plea referred to the corporate entity's "reckless failure to protect the job site in accordance with OSHA standards."

Defendants did not testify they knew there was a substantial certainty of injury from the lack of a secured trench. The corporate entity only pled guilty to an offense that included a "knowing" element. The civil reservation protects the disclosure of the plea itself, and the elements of the offense to which defendants have agreed to accept guilt. Only if there were contradictions between the allocution testimony and any testimony by the same individual in a civil case can the person be impeached with the testimony from the plea hearing. Even if that occurred, the elements of the offense and the plea itself would not

be disclosed. The plea agreement here does not provide the "substantial certainty" required under the conduct prong.

Because the motion judge found plaintiffs could not satisfy the conduct prong, he did not analyze the context prong. As we have reached the same conclusion, we only briefly address plaintiffs' arguments.

Plaintiffs contend the circumstances here were more than "a fact of industrial life of employment . . . ." They also urge this court to reject defendants' proffered defense of "willful ignorance."

Millison and its progeny have "set a high threshold for the context[] analysis." Van Dunk, 210 N.J. at 474. In Van Dunk, the Court found that the trench cave-in at the construction site was not so far outside the bounds of industrial life as to never be contemplated for inclusion in the WCA. Ibid. It did so despite the employer knowing about OSHA regulations and the requirement that trench boxes be used in trenches deeper than five feet. Id. at 455. In addition, the employer was found to have willfully violated OSHA standards. Ibid.

Like Van Dunk, this tragic case is not similar to the industrial settings of Laidlow, Crippen, and Mull, where the employers were aware of OSHA safety requirements, had been reprimanded by OSHA in the past, deliberately deceived

22

OSHA into believing they had resolved the safety issues, and ignored prior injuries and complaints from employees. Plaintiffs have not vaulted the high bar required by our Court to satisfy the context prong. We decline to establish a new standard of analysis – whether defendants "willfully ignored" OSHA safety regulations – to satisfy the prong.

For the reasons stated, we are satisfied there were no material disputed issues of fact to preclude the entry of summary judgment and the motion judge properly applied the facts to the applicable law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

SABATINO, P.J.A.D., concurring.

After an unstable trench at a job site violating OSHA safety standards caved in and crushed to death two laborers, the State of New Jersey brought criminal charges against the decedents' employer, Bednar Landscaping Services, Inc. ("the Company") and at least two of its principals, Keith Bednar and Christopher Liberatore.[1]

The two principals negotiated the diversion of the individual charges against them under the pre-trial intervention program. The Company was charged in an Accusation under N.J.S.A. 2C:17-2(d)(1), which makes it a fourth-degree criminal offense to "<u>knowingly or recklessly</u> fail[] to take reasonable measures to prevent or mitigate widespread injury or damage," if the defendant "<u>knows</u> that [it] is under an official, contractual or other legal duty to take such measures." (Emphasis added).

With the approval of a Criminal Part judge, the Company pled guilty to the Accusation. At the plea hearing, no fact witness or principal from the Company testified. Instead, the factual basis for the Company's guilty plea was memorialized in the following two-paragraph document presented to the court pursuant to <u>Rule</u> 3:7-10(c) by the Company's criminal defense attorney:

---

[1] It is unclear from our present record if L. Peter Liberatore was individually named in the criminal charges.

BEDNAR LANDSCAPING SERVICES, INC.
CORPORATE FACTUAL BASIS FOR GUILTY
PLEA TO N.J.S.A:2C 17-2d(1)
ACCUSATION NO. 18-01-00064-A

On or about October 1, 2014, Bednar Landscaping was performing work at a customer's home on Rockaway Valley Road, Boonton Township, Morris County, New Jersey, by installing a French drainage system around the customer's house. The French drains were being installed against the building's foundation in a trench that Bednar Landscaping was excavating. The trench was supported on one side by the building's foundation. However, the other wall of the trench was neither sloped nor protected by shields or shoring for the depth of trench as required by OSHA Standards 29[]CFR[§]1926.652(b)(c).

As a result of the <u>reckless failure</u> to protect the job site in accordance with the OSHA standards, there was a trench cave in which caused two workers, Selvin [Zelaya] and Oscar Portillo to be trapped and to perish in the cave in before they could be rescued by emergency personnel or by other co-workers who were also working at that location. Throughout the project there were in excess of five Bednar employees at the job site.

[(Emphasis added).]

The terms of the plea agreement included a civil reservation pursuant to Rule 3:9-2 disallowing its admission as evidence in related civil proceedings. The prosecutor took no position on that request for a civil reservation, but the Estate of Mr. Portillo intervened in opposition. The intervenor argued the

2

defendant had not shown "good cause" for the reservation. The Criminal Part judge rejected that argument and approved the terms of the plea. The judge imposed on the Company a sentence of two years of probation, and the payment of $50,000 in restitution to the decedents' families.

The intervenor appealed the civil reservation. In July 2019 a panel of this court issued a per curiam opinion affirming the Criminal Part judge's decision. Among other things, the opinion upheld the Criminal judge's reliance on the Company's contention that "its insurance carriers would be more likely to indemnify [it for claims by the estates] if [the Company] obtained a civil reservation."

In the present civil action, the estates have sought money damages for wrongful death and survivorship, arising out of what they characterize in their joint complaint as "intentional, willful, knowing and deliberate actions, with substantial knowledge and/or virtual certainty of the injury or death of the [decedents]." (Emphasis added).

Defendants have disavowed having such knowledge. For instance, in the Company's Statement of Uncontested Material Facts pursuant to Rule 4:46-2, it asserts that prior to this fatal accident, "Mr. Bednar was unaware of the risks of a cave-in of a trench," and "was not aware of the dangers inherent in working in

3

a trench without shoring or a trench box." The defense also maintains that Peter Liberatore "was unaware of safety requirements pertaining to trenches before October 1, 2014" and Christopher Liberatore "did not know of any requirement that trench boxes be used nor of any OSHA regulations," and had "no knowledge on [sic] any increased risk of cave-in after 'rain.'"

The apparent dissonance between the defendants' lack-of-knowledge assertions in this civil case—as contrasted with the Company's plea of guilty to a criminal accusation charging it under N.J.S.A. 2C:17-2(d)(1) of violating a known legal duty to take precautionary safety measures—is, to say the least, troubling. Either the Company and its officials knew the trench was unsafe, or they didn't.

This seeming inconsistency raises the question of whether the civil reservation would bar the use of the guilty plea and the associated factual basis as evidence to impeach defendants' professions of lack of knowledge in this case. In Stone v. Police Dep't of Borough of Keyport, 191 N.J. Super. 554, 558 (App. Div. 1983), we held that, although civil reservations have benefits in helping to resolve criminal matters, their evidentiary bars may be lifted to impeach a party in the civil case who offers testimony inconsistent with the allocution or factual basis underlying the criminal plea. Here, the written factual

basis admits to "reckless" conduct, but is silent about whether the Company possessed the knowledge required to support guilt of a knowing offense under the statute.

The civil judge who granted summary judgment to defendants assumed that the civil reservation would not bar the criminal plea from consideration for purposes of the motion analysis. However, the judge concluded the criminal plea was inconsequential because the plea was based on a factual basis admitting to reckless conduct. That begs the question, however, if the plea necessarily had to include at least an implicit admission under subsection (1) of N.J.S.A. 2C:17-2(d) requiring that the defendant "knows" that it was under a legal duty to take precautionary measures. The guilty plea was not predicated on subsection (2), i.e., that defendant "did or assented to the act causing or threatening the injury or damage." Indeed, the heading of the factual basis cites subsection (1), not (2).

We need not resolve this thorny question of impeachment because defendants' knowledge or lack of it turns out to be non-dispositive. As my colleagues explain in the majority opinion, the Supreme Court has not recognized a theory of "willful ignorance" as a basis to overcome N.J.S.A. 34:15-8's bar to a civil action against an employer with workers' compensation

immunity. So if, as they now assert, defendants did not know about the need for a trench box, their ignorance is non-actionable.

Alternatively, even if the Company and its officials knew the absence of a trench box was unsafe, their conduct, which the motion judge fairly characterized as bespeaking "recklessness or gross negligence," does not appear to be materially worse than the employer's conduct in <u>Van Dunk v. Reckson Assocs. Realty Corp.</u>, 210 N.J. 449, 455 (2012). The supervisor in <u>Van Dunk</u> admitted in the post-accident investigation of the cave-in fatality that he had been aware of the trench box safety requirement, <u>ibid.</u>, but despite that admission of knowledge, the Court agreed with this court that the conduct did not rise to the level of an actionable intentional wrong. <u>Id.</u> at 470-71. Also, in the present case, as the majority points out, there isn't clear proof defendants were "substantially certain" the lack of a trench box would produce injury or death.

Having expressed my concerns, I join in the majority's decision to affirm summary judgment. Despite the avoidable nature of this double tragedy, the law enacted by our Legislature as construed by our Supreme Court limits these survivors to workers' compensation death benefits and disallows a jury award for additional recovery.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3110-19